## MEYER VS. THE STATE.

If a juror, in a criminal case, state upon his *voire dire*, that he has formed an opinion as to the guilt or innocence of the prisoner, from rumor, he should be required to state, also, that the opinion was not such as to bias or prejudice his mind, in order to render him competent: and if he states that he has conversed with persons about the case, and formed his opinions from such conversations, he should be required to state further, that such persons did not profess to have a personal knowledge of the matters stated by them, but it is not necessary that he should know, or be able to state whether such persons were witnesses in the case.

Where a juror admits that he has formed an opinion as to the guilt or innocence of the prisoner, he is incompetent; and to remove the disqualification, it is incumbent on the State, not the prisoner, to make it appear that the opinion was founded on rumor, and was not such as to bias or prejudice his mind. (*Stewart vs. State,* 13 *Ark.* 727.)

A confession made by the prisoner, voluntarily and freely, without promise or threat, to the sheriff while under arrest, held competent evidence.

If the prisoner has neglected to avail himself before the trial, of any of the means provided by law for ascertaining the incompetency of a juror, on account of prejudice, he would not, under our statute, be entitled to a new trial on the ground of such prejudice.

If the incompetency of the juror, on account of prejudice, be discovered after trial and conviction, it would not be safe to hold that the prisoner could take *ex parte* affidavits to establish the prejudice, and claim a new trial absolutely as matter of right.

*Error to the Circuit Court of Pulaski county.*

The Hon. John J. Clendenin, Circuit Judge.

James B. Johnson and Williams & Williams, for the plaintiff.

The juror, Beard, was incompetent, because, 1st, he did not know that the persons with whom he conversed, were not witnesses; nor whether they professed to speak from personal knowledge or hearsay; 2d, he did not state that the opinion

formed from rumor had left no bias'or prejudice on his mind. *Stewart vs. The State*, 8 *Eng.* 727; *Nelson vs. The State*, 13 *S. & M.* 500; *People vs. Vermilyen*, 7 *Cow.* 121.

The confessions made to the sheriff while the prisoner was under arrest, should have been excluded. 1 *Kinn. Comp.* 344; *Whart. on Cr. L.* 252; *Rex vs. Dunn*, 4 *C. & P.* 543; 2 *Hawk. P. C. ch.* 46; *Rex vs. Partridge*, 7 *C. & P.* 551; *Rex vs. Shepherd*, 7 *Ib.* 579.

The Court should have granted a new trial, on account of the surprise created by the prejudice of the juror, Beard, as it was evident that he had prejudged the case, and his prejudice was unknown. *Cosby vs. The State*, 3 *How.* (*Miss.*) *Rep.* 31; 2 *Salk.* 645; 1 *Graham on New Trials*, 129, 130; 3 *Dallas* 515; *Dig., ch.* 52, 161; *Cons. of Ark., Art.* 2, *see.* 11; *Childress vs. Ford*, 10 *S. & M.* 29; *Hopkins' Case*, 1 *Bay* 373.

Mr. Attorney General Johnson, for the State.

Mr. Chief Justice English delivered the opinion of the Court.

At the June term, 1856, of the Pulaski Circuit Court, Louis Meyer was convicted upon an indictment for the murder of John Clodell, and sentenced to the Penitentiary for twenty-one years. The Court having refused him a new trial, he excepted and brought error.

1. The prisoner insists that it appears from the record before us, that he was tried at a term of the Court held at a time not authorized by law· The record entry showing the time when the Court was held, is as follows:

" Be it remembered, that at a Circuit Court, begun and held within and for the county of Pulaski, etc.; at etc., on the *first Monday of June*, A. D. 1856, being the *twenty-third day of said month*, and the time prescribed by law for holding said court, present, the Hon. J. J. Clendenin, judge, etc., etc., the following proceedings were had," etc.

The *fourth* Monday of June, 1856, was the time prescribed by the law then in force, for holding one of the regular terms

of the Pulaski Circuit Court; and the *fourth* Monday was the *twenty-third* day of that month. The entry above copied shows that the Court was commenced on the 23d day of June, which is corroborated by several other entries contained in the transcript before us. The recital, therefore, in the *caption entry*, that the Court was begun and held on the *first Monday* of June, is manifestly a clerical error, made, perhaps, in transcribing the record, etc. At all events, it sufficiently appears that the Court was commenced on the day prescribed by law.

2. It appears from the bill of exceptions, that the parties failing to make up a full jury from the regular veniremen, twenty talesmen were summoned, and a list of their names furnished to the prisoner. *Thomas Beard*, the first upon the list, was called and put upon his *voir dire*, (being challenged for cause, we suppose,) and was asked by the Court, whether he had formed or expressed any opinion as to the guilt or innocence of the prisoner?

He answered that he had.

The Court asked him whether that opinion was formed upon rumor or from hearing the witnesses? He answered that it was from rumor.

Whereupon, the prisoner's counsel, by leave of the Court, asked him whether he had conversed with any one about the case?

He answered that he had conversed with several persons.

Prisoner's counsel then asked him if he knew whether the persons with whom he had conversed were witnesses?

He answered that he did not.

The names of several of the witnesses for the State were called over, and he said he had not conversed with any of the persons named.

Whereupon the Court decided that he was a competent juror, and neither party challenging him peremptorily, he was sworn as such, but the prisoner excepted to the opinion of the Court deciding the juror to be competent; and made this one of the grounds of his motion for a new trial.

In prosecutions by indictment, the Bill of Rights (*sec.* 4,) secures to the accused, a trial by an *impartial jury.*

If a juror has formed ôr delivered an opinion on the issue, or any material fact to be tried, it is good cause of challenge; but if it is made to appear that such opinion is founded upon rumor, and is not such as to bias or prejudice the mind of the juror, he is competent. Such is clearly the import of *sec.* 161, *chap.* 52, *Digest,* as held in the case of *Stewart vs. The State,* 13 *Ark.* 727.

In this case, the juror, having stated that he had formed an opinion upon rumor, should have been required to state also that the opinion was not such as to bias or prejudice his mind, in order to render him competent. And having stated that he had conversed with persons about the case, if he had formed his opinions from such conversations, he should have been required to state further, that such persons did not profess to have a personal knowledge of the matters stated by them, in order to show that his opinion was really founded on rumor, but it was not necessary for him to know, or be able to state, whether such persons were witnesses in the cause or not, as held in Stewart's case.

Where a juror admits that he has formed or expressed an opinion as to the guilt or innocence of the prisoner, the law regards him as an unfit person to compose part of such *impartial* jury as the Bill of Rights secures to the accused; but the disqualification is removed, if he be able to state that such opinion is founded upon *rumor* in its proper sense, and is not such as to bias or prejudice his mind. This is the substance and effect of the decision in the *Stewart* case on this point.

The Attorney General insisted in the argument of the cause, that the juror was not asked whether the opinion formed by him was such as to bias or prejudice his mind; and that the prisoner having failed to interrogate the juror as to this, could not afterwards complain of the omission. But this is not a tenable position. The juror being challenged for cause, whenever it appeared that he had formed or expressed an opinion as to the

guilt or innocence of the prisoner, his incompetency was made out, and it was incumbent on the State, in order to remove the disqualification, to make two things appear; *first*, that the opinion was founded upon *rumor;* and *second,* that it was not such as to bias or prejudice the mind of the juror.

It follows that the Court erred in deciding *Beard* to be a competent juror.

After his competency was determined by the Court, the prisoner did not get clear of him by peremptory challenge, but permitting him to be sworn as a juror, rested upon his exception to the decision of the Court, which he had a right to do, as clearly intimated upon the authority of cases cited in *Stewart's* case.

3d. John Peay, the sheriff, witness for the State, testified that on the night that he heard that the prisoner had shot the deceased, he went immediately and arrested him, and while under arrest he remarked to the prisoner *that it was a bad scrape.* To which the prisoner made some reply which witness did not understand, and then said "he stole my ax and some crackers from me, and I shot him, and would do it again."

Witness understood him to speak of the person he had shot. Witness said nothing to the prisoner, before he made the above confession, except " *that it was a bad scrape.*"

The prisoner objected that it was not competent for the State to prove the confession made by him under the circumstances stated by Peay, but the Court overruled the objection, and the prisoner excepted, and made this one of the grounds of his motion for a new trial.

A confession is not admissible in evidence, unless it was made freely and voluntarily, and not under the influence of promises or threats. *Roscoe Cr. Ev.* 39.

The remark made by Peay to the prisoner, on arresting him, " *that it was a bad scrape*" imports neither a promise nor a threat, and the response of the prisoner seems to have been freely and voluntarily made. Among the many cases collected in the books on evidence, illustrative of the rule above stated, there is

no adjudication to be found which would warrant the exclusion of a confession made upon such inducement.

4th. A further ground assigned by the prisoner in his motion for a new trial, is that the "*jury were packed and prejudiced.*"

In support of the motion, the prisoner filed the affidavits of Halsted Addy and John F. Tune, taken before a justice of the peace, in substance as follows:

*Addy* swore that he heard *Beard*, one of the jurors, say, after he was summoned as a juror in the case, and before the trial, that he would hang the jury until his hair dragged the ground (or some such expression,) but he would hang Meyer, the prisoner.

*Tune* swears that Thomas *Beard*, one of the jurors in the case, after he was summoned as a juror, and before the trial, in a conversation with affiant, said that he would hang the jury *until hell froze over*, but he would hang Meyer, the prisoner.

The affidavit of Samuel W. Williams, senior counsel for the prisoner, was also filed in support of the motion for a new trial, in which he stated that his associate counsel and himself had the entire selection of the jury in the cause, and that affiant was totally ignorant of any prejudice existing in the mind of any juror selected, and that he verily believed that his associate junior counsel was also, until after the jury was empanneled and sworn.

The juror *Beard* referred to in these affidavits, appears to be the same juror who stated, upon his examination by the Court, that he had formed and expressed an opinion as to the guilt or innocence of the prisoner, upon rumor, and who was decided to be competent without inquiry, by the Court, whether the opinion was such as to bias or prejudice his mind. The sequel of the case illustrates the importance of strictly complying with the requisites of the statute in all cases. Had *Beard* been asked whether the opinion founded and expressed by him was such as to bias or prejudice his mind, and answered in the affirmative, of course the Court would have excluded him from the jury. Had he answered in the negative, he might have been subject,

upon the testimony of *Addy* and *Tune*, to an indictment for perjury.

If the affidavits are to be credited, he was utterly unfit to serve upon the jury.

The Attorney General insists that an objection to the competency of a juror, for prejudice or other cause, cannot be taken after verdict, and made ground for a new trial.

*Sec.* 20, *chap.* 94 *Digest* declares that, " No exception against any juror, on account of his citizenship, non-residence, age, or other legal disability, shall be allowed after the jury are sworn."

*Sec.* 162, *chap.* 52 *Digest* also declares that all challenges for cause shall be made before the jury is sworn.

*Sec.* 163, *of the same chap.*, declares that, " if the cause of challenge be discovered after a juror is sworn, and before any part of the evidence is delivered, he may be discharged, or not, in the discretion of the Court." *See Cornelius vs. The State*, 7 *Eng. Rep.* 782.

There are many cases to be found in the reports of our sister States, where exceptions to the competency of jurors were made after verdict, for the purpose of obtaining new trials, and the decisions sustaining or overruling such exceptions are not in harmony. See cases cited in *Wharton's Cr. L. p.* 905, 923.

The design of the statutes above copied was no doubt to cut off such exceptions, generally, after verdict, etc.

The qualifications of jurors as to citizenship, residence, age, etc., having been prescribed by the legislature, it was certainly competent for the same power to determine when exceptions should be taken to the competency of a juror for the want of such qualifications. It is a mere matter of practice within the control of the law-making power.

And though the constitution secures to the accused the right to be tried by an *impartial* jury, yet the administration of this right must necessarily be regulated, though it cannot be cut off by the legislature.

The regulations prescribed by the legislature for the empan-

enling of juries in criminal cases, are well calculated to secure to the accused a fair and impartial trial.

In accusations for murder, like the one before us, thirty-eight veniremen are summoned, and a list of their names is delivered to the prisoner forty-eight hours before the trial, in order that he and his counsel may have full opportunity of making inquiries as to their competency, etc. In addition to the twenty peremptory challenges allowed him, he may, if he thinks proper, challenge every juror for cause, and have the challenge tried by the Court, upon the oath of the juror, or by triers, on other evidence. *Stewart vs. State, ubi sup.* If he chooses to have the juror put on his oath, he may cause his conscience to be thoroughly sifted, under dread of the penalties of perjury, as to his competency on the grounds of prejudice, etc. If the jury is not made up from the regular veniremen, the prisoner must necessarily be put upon talesmen, without much time to enquire into their characters, but as to them he also has the right of challenge for cause.

The right to be tried by an *impartial* jury being guarantied to the prisoner by the constitution, we are not prepared to say that a new trial should be granted in no case where it is discovered after verdict, that one or more of the jurors were incompetent by reason of *prejudice*; but we think it may be safely said that if the prisoner has neglected to avail himself of any of the means provided by law for ascertaining such incompetency of the juror before the trial, he would not, under our statute, be entitled to a new trial on the ground of such prejudice.

If the prisoner is aware of the incompetency, and does not make the objection before the juror is sworn, it is clear that he could not avail himself of it after verdict. *Lish vs. The State*, 6 *Mo.* 426; *Pierce vs. Bush*, 3 *Bibb* 347; 4 *Ib.* 272; *Wharton's Cr. L.* 905.

So, upon principle, we think if when the juror is called to the stand, the prisoner takes him, without availing himself of his right to challenge him for cause, for the purpose of testing his impartiality, and it should be discovered after verdict that he

was incompetent by reason of prejudice, the prisoner would not be entitled to a new trial on that ground, under our statute. See *The State vs. Fisher*, 2 *Nott & McCord*, 261; *State vs. Quarrel*, 2 *Bay* 151.

We have said that we could not say that a new trial should be granted to the prisoner in no case on the ground of a discovery, after verdict, that a juror was incompetent by reason of prejudice, because cases might arise in which one or more jurors, who had prejudged the prisoner's guilt, might impose themselves upon the pannel by concealment or perjury, notwithstanding the prisoner availed himself of all the privileges allowed him by law to obtain an impartial jury. In such cases the incompetent jurors would be guilty of a fraud upon the law, and it might be necessary to grant the prisoner a new trial in order to give him a constitutional right, of which he had been deprived without fault or negligence on his part.

If, in this case, the juror, *Beard*, had really and seriously expressed the determination, before the trial, to convict the prisoner at all events, he was guilty of a fraud upon the law, and upon the prisoner's rights, in hypocritically taking upon himself the solemn oath of a juror, and falsely assuming to act as an *impartial* arbiter of the life or liberty of the prisoner.

But it would not be safe to hold that the prisoner, after conviction, could take the *ex parte* affidavits of persons out of doors, to establish the prejudice of the juror, and bringing them into Court, claim a new trial, absolutely, and as a matter of right, upon such affidavits, as insisted by the counsel of the prisoner in this case. Such a practice might open the door for corruption and perjury.

On the contrary, when such affidavits are filed, in support of the motion for a new trial, on such grounds, the Court might well have the persons, who made them, brought into Court, for the purpose of ascertaining that the affidavits were fairly obtained, and that they were persons of credit, etc. It might, also, have the impeached juror called in, for the purpose of affording him an opportunity of explaining any remarks,

attributed to him, as manifestations of his incompetency. And after ascertaining all the facts in relation to the matter, the Court would necessarily have to exercise a sound legal discretion in disposing of the motion, as in applications for new trials upon other grounds. 1 *Rob. Va. Rep.* 735; 5 *Kinne's Comp.* 179; *Commonwealth vs. Jones*, 1 *Leigh* 595.

In this case, nothing appears of record to discredit the affidavits of *Addy* and *Tune*, and the Court below, perhaps, overruled the motion for a new trial, under the impression that, under our statute, the competency of jurors could, in no case, be impeached after the trial.

In consequence of the error of the Court, in deciding Beard to be a competent juror, considered in connection with the subsequent affidavits of his unfitness to be a juror, we think it safest to reverse the judgment, and to allow the prisoner a new trial.

Absent, Mr. Justice SCOTT.