REYNOLDS *v.* STATE.

4150 136 S. W. 2d 1028

Opinion delivered February 12, 1940.

E. W. Brockman, for appellant.

Jack Holt, Attorney General and Jno. P. Streepey, Asst. Atly. General, for appellee.

HUMPHREYS, J. An information was filed in the circuit court of Lincoln county by the prosecuting attorney of the eleventh judicial circuit of the State of Arkansas, of which Lincoln county is a part, charging Garland Reynolds, Woodrow Taylor and Martin McBryde with the crime of grand larceny on or about the 24th day of February, 1939, in said county, by wilfully, unlawfully and feloniously taking, stealing and carrying away four hogs, the property of John Estelle with the felonious intent of converting same to their own use and of depriving the true owner thereof contrary to law.

When the case was called for trial in the circuit court Woodrow Taylor failed to appear and a forfeiture was taken on his bond. The state entered a *nolle prosequi* against Martin McBryde and subsequently used him as a witness in the case against Garland Reynolds, the appellant herein.

Appellant pleaded not guilty and the cause was tried upon the issues joined, the evidence introduced by the respective parties and the instructions of the court,

resulting in a verdict of guilty and a sentence to one year in the state penitentiary, from which an appeal has been duly prosecuted by appellant to this court.

The evidence introduced by the state was, in substance, as follows: John Estelle, the owner of the hogs, lived in the northern part of Lincoln county near Snyderville. The hogs were allowed by him to run outside in the woods, but they came up to his house every night. Ervin Williams was living with John Estelle, and during the afternoon of the 24th of February they heard some dogs barking in the woods and at the suggestion of a passerby that something was happening to Estelle's hogs he took a .22 rifle and he and Ervin Williams went down there and after walking about 300 yards they discovered three men, Woodrow Taylor, and two others who ran away, and three of Estelle's hogs tied by the feet and head. The hogs which were tied were being attacked and barked at by two of appellant's dogs. In a short time appellant, who had run away, returned to the scene where the hogs were tied, and after claim was made to the hogs by John Estelle, they were released. All the parties then walked over to appellant's car which was located on the highway about three quarters of a mile distant. While they were talking, Lester Cogbill and Jess Brown came up and there was considerable discussion about the catching of the hogs and it was agreed that all of them would go down to the home of a justice of the peace by the name of Alf Thomas. Jess Brown testified that while they were standing at the car appellant told them that the hogs belonged to a negro who paid them to come down and catch the hogs. He told them the negro was Essex Marks' cousin and denied that Martin McBryde was the negro who had helped him catch the hogs, but later admitted that McBryde was the one that helped him.

Lester Cogbill testified that he understood appellant to say that when he tied the hogs up he thought they belonged to his brother Claudie.

Alf Thomas, the justice of the peace before whom Woodrow Taylor and appellant were brought, stated that appellant said the hogs that were tied belonged to

some negro, but that he did not know the negro. He also stated that in a trial before him appellant claimed the hogs belonged to his brother.

Martin McBryde testified that appellant came to him about four o'clock p. m., on the 24th day of February, and got him to help catch some hogs that he said belonged to him and that when John Estelle and Ervin Williams came upon them they ran off in the thicket; that they ran off together and that the reason he ran away was because Estelle had a rifle; that after they caught one hog they would catch another; that he helped them tie them; that he was helping them because he wanted to earn the dollar appellant had promised him.

Appellant testified in his own behalf, admitting that he had hired Martin McBryde and agreed to give him $1 to help them catch the hogs, but denied that he told McBryde or anyone else that the hogs belonged to him, but that he told all of them all the time that the hogs belonged to his brother and that when they caught them and tied them up he did so purusant to an agreement with his brother that he might have part of them for catching them. He made the explanation that when he left the scene and ran away he ran down to where his other dog had caught a hog to keep the dog from killing the hog.

Appellant's brother testified that he had gotten him to catch his hogs for him; that when he heard of appellant's arrest, and that the hogs had been turned loose he went over to John Estelle's home to see them, but after looking at them he decided they did not belong to him although they were marked exactly like his hogs were; that he and John Estelle had the same mark.

Appellant introduced other evidence corroborating his own testimony to the effect that his brother had employed him to catch his hogs.

At the conclusion of the testimony the court at the request of the state gave instruction No. 1, which is as follows: "If you believe from the evidence in this case beyond a reasonable doubt that the defendant, Garland

Reynolds, in Lincoln county, and within three years prior to the filing of the information, unlawfully and feloniously caught and tied up, or helped catch and tie up, the hogs in question, the property of John Estelle, with the felonious intent to convert them to his own use and deprive the true owner thereof, you will convict him of grand larceny as charged.''

This instruction was specifically objected to because he says it told the jury that the catching and the tying up of the hogs was a sufficient asportation of them to constitute larceny whereas larceny is the felonious taking, stealing and carrying away of the property of another.

Apellant asked the following instruction No. A, which is as follows:

''If you believe from the evidence in this case beyond a reasonable doubt that the defendant, Garland Reynolds, within three years next before the filing of the information in this case, did unlawfully and feloniously take, steal and carry away the hogs mentioned in the information, the property of John Estelle, with the felonious intent to convert them to his own use, and to deprive the true owner thereof, you will convict him of the crime of grand larceny as charged.''

The court refused to give the instruction over appellant's objection and exception.

Appellant contends for a reversal of the judgment of conviction because there is no substantial evidence in the record showing that the hogs were carried off and that since asportation of the stolen property was a necessary essential of larceny the verdict and judgment of conviction is not sustained by substantial evidence. In other words, the contention for a reversal is that the technical failure to prove that the hogs were moved after they were caught and tied up leaves the verdict and judgment without any substantial evidence to support same. We can not agree with this contention. There is evidence in the record to support all the elements of a larceny of the hogs unless it be that catching

the hogs and tying them foot and mouth do not constitute an asportation of them. The hogs had been turned out to range in the woods near the owner's home. They were chased and caught one at a time after which their feet were tied so as to keep them from getting away and their mouths were tied so as to keep them from biting appellant and those helping him. They were caught with the dogs of appellant and, according to substantial evidence in the record, appellant and those helping him were going to carry them over to the road for the purpose of putting them into a car and converting them partly to appellant's own use. In chasing, catching and tying them up one at a time, there was necessarily a moving of them from the place where the owner had permitted them to range. We are of the opinion that from the very beginning of the chasing there was an asportation of them.

It was said in the case of *Lundy* v. *State*, 60 Ga. 143, in substance, that the slightest moving from the place in which the goods were left by the owner is sufficient proof of asportation. That was a case where a cow was shot down belonging to another which was ranging in the woods. The defendant in that case took possession of the carcass and proceeded to skin it and when he had gotten half through he was frightened away leaving the carcass of the animal where he had felled it. The court ruled that the facts were sufficient to show an asportation. So, also, in the case of *Cross* v. *State*, 64 Ga. 443, where a person killed a hog, the property of another, and was frightened away before moving the carcass the court ruled that the asportation was complete. In the case of *Driggers* v. *State*, 96 Fla. 232, 118 So. 20, the Supreme Court of Florida discussed the question of what would constitute the asportation of animals which, under the Florida statute, was a necessary element or ingredient of larceny. In that particular case the defendant had killed the animal causing it to fall and lie upon its side and then proceeded to prepare the carcass for beef. It is true the defendant in that case was a trespasser and had killed the animal in a pasture

in which it was grazing. A number of cases were cited and commented upon by the court in that case, two of which have been referred to in this opinion, and the court layed down the rule that (quoting the second syllabus) ''Asportation of the thing stolen is shown by the slightest removal; complete severance of the owner's possession and actual possession by the wrongdoer establishes asportation.'' We think under the rule announced that there is substantial evidence in the instant case showing that the asportation commenced when the hogs were chased and caught and was continued in the tying of their feet and mouth. These acts were certainly acts of ownership over the hogs by appellant and a severance of the owner's possession temporarily or until appellant and those helping him were frightened away. Appellant admits that his purpose and intention was to take the hogs to the home of himself or his brother's home and we think when he chased them, caught them and tied them up it amounted to an asportation of them during the time he was thus catching and handling them. In other words, we think the catching and tying them was an act in the process of carrying them away, and clearly an asportation of them.

Having determined that there was an asportation of the hogs it follows that the court correctly instructed the jury in instruction No. 1 and refusing instruction No. ''A'' requested by appellant.

No error appearing, the judgment is affirmed.