ANDERSON *v.* STATE.

4160 139 S. W. 2d 396

Opinion delivered April 29, 1940.

*C. A. Holland* and *Dene H. Coleman,* for appellant.

*Jack Holt,* Attorney General and *Jno. P. Streepey,* Asst. Atty. General, for appellee.

Humphreys, J. Appellant was indicted, tried and convicted of the larceny of a rock crusher, the property of Stone county, and was adjudged to serve a term of one year in the state penitentiary as a punishment therefor, from which is this appeal

Appellant assigns as reversible error that there is no substantial evidence in the record tending to show that appellant stole the rock crusher. The evidence, reflected by the record, stated in the most favorable light to the state is, in substance, as follows:

The county owned a rock crusher worth about $500, which the county was not using, but which it left on the road-side near Rushing; that appellant, who was the sheriff of the county, employed Willie Brewer to take the rock crusher to Kern-Limerick Co. in Little Rock and bring back a Schramm air compressor, which he did, and for which service appellant paid him $5; that this service was performed some time in September, 1937; that appellant in July, 1937, arranged to trade the rock crusher to Kern-Limerick Co. for a Schramm air compressor and that the exchange was made pursuant to and in keeping with the trade; that after receiving the air compressor appellant rented it to the government of the United States and collected for its use approximately $1,184.25 which he converted to his own use; that no order was made or entered on the record of Stone county

showing that the then county judge, Judge Gray, had sold the rock crusher to appellant.

The jury could have found, if they believed this evidence, that the appellant through an employed agent removed the rock crusher from Stone county without right or authority and disposed of same for his own benefit. If the jury believed the evidence detailed above, every necessary element of larceny including the *corpus delicti* is sustained by substantial evidence. The rule is that the *corpus delicti* or asportation is shown by the slightest removal; complete severance of the owner's possession and actual possession by the wrongdoer establishes asportation. *Reynolds* v. *State*, 199 Ark. 961, 136 S. W. 2d 1028.

Appellant also assigns as reversible error the admission of the testimony of C. W. Colton to the effect that appellant rented a Schramm air compressor to the Government and collected a total of approximately $1,184.25 in rentals from the Government. The court admitted this evidence as tending to show the intention or motive on the part of appellant at the time of taking the rock crusher. The court told the jury in admitting it that it would be immaterial as to what appellant did with the air compressor for which he traded the rock crusher if he took the rock crusher in good faith, but that if the testimony shed any light on his motive and intent at the time of taking the rock crusher, they might weigh it along that line and consider it for that purpose only. We think it was admissible as tending to show the intent of appellant at the time he took and removed the rock crusher.

Appellant also assigns as error the testimony of Mrs. Frances Harton to the effect that there had never been an order made of record by the county court in which the county judge, Judge Gray, sold and disposed of the rock crusher which was alleged to have been stolen by appellant. It is true that appellant was not responsible for the failure to enter such a judgment if it were made, but we think it a circumstance tending to show that such an order was never made. It was a circumstance tending to show that appellant did not take the rock crusher in good faith and for that purpose it was admissible.

Appellant also assigns as reversible error of the judgment that two of the jurors, Cris Jason and W. B. Mitchell, who sat as jurors in the case and qualified themselves as jurors on their voir dire examination had expressed themselves to a number of citizens a short time prior to serving on the jury showing that they had definite and fixed opinions as to the guilt of appellant of the charge made against him. Appellant filed an amended motion to its motion for new trial setting out in detail the statements these jurors made, when made and to whom made. It was alleged in the amended motion for a new trial that Cris Jason had made statements a short time before the trial to Weldon McIntyre, Alonzo McIntyre, Ulas Jason and Ray Burns to the effect that appellant "was the biggest liar there was in Stone county and that they had no use for him;" that "they aim to do something with him for stealing the rock crusher;" that appellant "was stealing everything in the county he could get his hands on and that he stole the county's machinery, the rock crusher;" and that "they were going to send him to the penitentiary when court sets," etc.

It was also alleged in the motion that W. B. Mitchell, one of the jurors who sat in the case, had expressed himself concerning appellant a short time before the trial to Wilma Meredith as follows: "He said that Clarence Anderson stole that stuff and we were talking about the rock crusher."

The witnesses to whom these statements were made by these jurors were examined on the motion for a new trial before the court and testified in detail as to these statements having been made to them. No evidence was introduced by the state controverting the statements of these witnesses. As the record stands the testimony of these witnesses is undisputed to the effect that Cris Jason and W. B. Mitchell not only had a definite opinion as to appellant's guilt before the case was tried, but they publicly and plainly expressed these opinions indicating that they were highly prejudiced against appellant. According to this record it is also clear that in qualifying themselves as jurors they withheld and denied their prejudice against appellant from the knowledge of the court

as well as from appellant. This court decided in the case of *Corley* v. *State,* 162 Ark. 178, 257 S. W. 750, (quoting syllabus 6) that:

"A remark by a juror, who was held competent on *voir dire* and accepted on the jury, that it was a dirty shame to admit defendant to bail on a charge of murder in another state, and that he should have his neck broken instead of being turned loose to come back and go to selling whiskey, was ground for new trial, where nothing appeared in the examination of the juror which indicated bias or prejudice against defendant, and the juror was not called on to explain or deny such remark, and there was no explanation or denial thereof in the record, and defendant did not learn of the remark until after the trial."

In deciding the Corley case, *supra,* this court said it was identical with the case of *Meyer* v. *State,* 19 Ark. 156, and pointed out that in the Meyer case, *supra,* there was nothing in the record to discredit the affidavits tending to show prejudice on the part of the juror and said that: "the juror himself, in the Meyer case, whose conduct was impeached, was not examined, nor was his affidavit taken in rebuttal of the alleged fraud and misconduct practiced upon the court by the concealment of his prejudice." In the instant case it appears that the jurors, Cris Jason and W. H. Mitchell, were prejudiced against appellant and that neither of them made any explanation of the alleged fraud practiced upon the court by the concealment and denial of their prejudice against appellant. In other words, the facts in this case bring it clearly within the cases of *Corley* v. *State, supra,* and *Meyer* v. *State, supra,* and the court should have followed them and granted the motion of appellant for a new trial. Persons charged with crimes are entitled to a trial by a fair and impartial jury and this right is guaranteed to them by the Constitution of the State of Arkansas. Verdicts returned by a jury where any member thereof had publicly expressed his opinion that the party charged was guilty of the crime and where this information was withheld from the court and the party charged with the crime by him at the time he qualified to sit upon the jury should

not be upheld by the courts. Nothing can destroy the integrity of juries more effectively than to allow prejudiced jurors to sit in a case. The courts should jealously preserve the integrity of juries.

The amended motion for a rehearing in the instant case should have been sustained by the court and on account of his failure to do so the judgment is reversed, and the cause is remanded for a new trial.