HOT SPRINGS STREET RAILWAY COMPANY *v.* ADAMS.

4-9042                                        226 S. W. 2d 354

Opinion delivered January 30, 1950.

*House, Moses & Holmes* and *Thomas C. Trimble, Jr.,* for appellant.

*J. H. Lookadoo, James T. Gooch* and *Agnes Ashby,* for appellee.

GEORGE ROSE SMITH, J.   The appellees, O. Fred Adams and his wife, recovered judgments totaling $10,500 for personal injuries and property damage sustained in a collision between their car and a bus operated by the appellant.   We discuss two of the appellant's contentions, as one necessitates a reversal and the other

goes to the question of whether the case should be dismissed.

On the latter point it is contended that the defendant below was entitled to an instructed verdict because its negligence was not proved and Adams' contributory negligence was established as a matter of law. This argument must be rejected. The appellees, residents of Clark County, were driving along Central Avenue in the city of Hot Springs at about noon on June 29, 1948. Adams, who had not traveled this street before, saw just ahead a traffic signal that intermittently flashed a red light. He testified that he threw out his hand and stopped as quickly as possible. A second or so later the appellant's bus struck the rear end of his car, knocking the vehicle fifteen feet or more and causing the injuries and property damage complained of.

The appellant's argument is based mainly on its proof that this traffic signal is merely cautionary and that the Hot Springs police have never required drivers to come to a halt before proceeding past the light. But the statute sanctions a failure to stop only when the cautionary light is yellow; drivers are required to stop before passing a flashing red light. Ark. Stats. (1947), § 75-506. Adams was a stranger to Hot Springs; it is not intimated that he knew the local custom with reference to this traffic signal. Consequently he was not necessarily negligent in making a quick stop, as he could assume that any vehicle behind him would be driven in anticipation of his making the stop required by law. The jury were warranted in concluding that the appellant's bus driver was negligent in not foreseeing that the Adams car might come to a standstill before continuing past the signal light.

Second, it is asserted that a juror failed to reveal information while the jurymen were being selected. The appellant's attorney inquired whether any members of the panel had been represented by any of the plaintiffs' attorneys. Two veniremen answered in the affirmative, and after some additional interrogation the court excused them both. Later on, while the jury was consid-

ering its verdict, the appellant's counsel examined the files in the circuit clerk's office and learned that another juror, S. D. Calloway, was represented in a pending suit by J. H. Lookadoo, one of the appellees' attorneys. When the jury brought in its unanimous verdict the appellant moved for a mistrial and questioned Calloway about his pending case. Calloway said he had not mentioned it because he thought it had been settled, and later said, ''I didn't understand it [the question], I guess.'' When the motion for a new trial was presented Calloway testified that he held up his hand when the veniremen were questioned about Mr. Lookadoo's having been their attorney, but the appellant's lawyer did not ask him any questions.

We believe that the trial court's failure to declare a mistrial was an abuse of discretion constituting reversible error. Even if we accept Calloway's statement that he held up his hand, it is perfectly clear that he knew his gesture had not attracted the attention of appellant's counsel. Both his action in raising his hand and his assertion that he thought his case had been settled show beyond any doubt that he understood the inquiry that was being put. The appellant was entitled to the information sought, as a basis for a peremptory challenge if not as a ground for challenging for cause. In these circumstances the juror's duty of candor extends well beyond a ready acquiescence in the supposition that counsel has decided not to pursue his inquiry. The very theory of an impartial jury trial demands that the juror take positive action to bring his possible disqualification out into the open when the question is raised. ''Nothing can destroy the integrity of juries more effectively than to allow prejudiced jurors to sit in a case.'' *Anderson* v. *State,* 200 Ark. 516, 139 S. W. 2d 396. For us to approve the denial of a mistrial in this case would, we think, be a disservice to our system of jury trials.

Reversed and remanded.