B. & J. BYERS TRUCKING, INC. *v.*
F. Eugene ROBINSON

83-262                                665 S.W.2d 258

Supreme Court of Arkansas
Opinion delivered February 27, 1984
[Rehearing denied March 26, 1984.*]

*ADKISSON, C.J., would grant rehearing.

*Butler, Hicky, Hicky & Routon, Ltd.,* by: *Preston G. Hicky,* for appellant.

*Kinney, Easley & Kinney,* by: *B. Michael Easley,* for appellee.

GEORGE ROSE SMITH, Justice. On a clear July afternoon in 1980 the plaintiff, Eugene Robinson, was injured when his car was struck from behind by a large tractor-trailer rig being driven by the defendant trucking company's employee. The jury's apportionment of 75% of the total negligence to the truck driver and 25% to the plaintiff settled the principal issue of fact: whether the collision was caused by the negligence of either or both of the drivers. The defendant, in appealing from the net judgment for $150,000 for the plaintiff, argues three points relating to the evidence and one to asserted misconduct by two jurors. None of the arguments has merit.

It is first argued that because the plaintiff's attorney had signed but not sworn to a denial in answer to a defense request for an admission, the court should have instructed the jury that the plaintiff had admitted fault in the accident. The request, however, had asked not the plaintiff himself but B. Michael Easley, "Attorney for Plaintiff, F. Eugene Robinson," to admit that Robinson was at fault in the accident. Even if we assume, without holding, that the

request related to an issue of fact within ARCP Rule 36 (a), the rule nevertheless contemplates that the request be directed to the adverse party, to be answered by that party. The trial judge properly rejected the defendant's attempt to require opposing counsel to respond to the request.

Second, a State police officer, Dennis Hensley, investigated the accident and was called as a witness by the plaintiff. On cross examination the officer was asked by defense counsel: "Did you tell me you thought they were about equally at fault?" After a detailed hearing in chambers the judge properly sustained the plaintiff's objection to the question. Officer Henley admitted during that hearing that he had had no training in reconstructing accidents, that he had never attempted to reconstruct one, that he had talked only to the truck driver and not to Robinson, who had been taken away from the scene in an ambulance, and that he had not considered the weight of the vehicles, their speed, or the grade of the hill. The officer's proffered conclusion of equal fault as between the drivers was essentially based only on his expressed belief that Robinson had a right to turn to his left and the truck driver had a right to try to pass a vehicle ahead of his own vehicle. There was no real basis for the witness to testify that the drivers were equally at fault, even assuming the admissibility of such an opinion.

Third, the plaintiff called Officer Kenneth Rogers to testify, as an expert, that the truck driver's speed when he applied his brakes must have been 59 miles an hour or more. Counsel first qualified the officer as an expert, by eliciting his testimony that he had studied the investigation and reconstruction of accidents for over 800 hours at various specified schools and universities, that he had taught the subject for over four years and was then teaching it at Arkansas State University, that he had reconstructed more than 150 accidents and testified a number of times in courts, and that he had written extensively on the subject. After the witness had been so qualified, but before he proceeded with his actual testimony, defense counsel made his only objection, "to Trooper Rogers's testimony in the record as to reconstruction. Under the Arkansas case law, it is not permitted." The objection was overruled and not renewed.

Officer Rogers testified that he had seen Officer Hensley's acident report and diagram (which presumably showed the truck's skid marks to have been continuous for 99 feet to the point of impact and 170 feet beyond that, as Hensley testified), had read the depositions of the two drivers, had visited the scene three times, had determined the grade of the hill, had examined the pavement, and had ascertained the weight of the tractor-trailer and its minimum legal braking requirements. The officer explained how he calculated the friction coefficient and finally estimated that the truck had been traveling at least 59 miles an hour rather than the truck driver's own estimate of 40 to 45.

Counsel's objection, that Arkansas case law does not permit any reconstruction of an accident, was not accurate. In *Woodward* v. *Blythe,* 249 Ark. 793. 462 S.W.2d 205 (1971), we adhered to our earlier position that attempts to reconstruct traffic accidents by means of expert testimony "are viewed with disfavor," but we nevertheless held that expert testimony was necessary in that case for an understanding by the jurors of the physical dynamics and causal relationships involved in the accident. Again, in *Wright* v. *Flagg,* 256 Ark. 495, 508 S.W.2d 742 (1974), we sustained the trial judge's exclusion of a witness's faulty attempt to reconstruct the accident, but we recognized the existence of exceptions to the broad exclusion of such testimony.

The determination of an expert witness's qualifications is a matter lying within the trial judge's discretion, to be upheld on appeal absent an abuse of that discretion. *Parker* v. *State,* 268 Ark. 441, 597 S.W.2d 586 (1980). With regard to accident reconstruction, the important consideration is whether the situation is beyond the jurors' ability to understand the facts and draw their own conclusions. *Woodward* and *Wright, supra.* Similarly, under Uniform Evidence Rule 702 the question is whether specialized knowledge will assist the jury to understand the evidence or determine a fact issue. Here Officer Rogers explained to the jury how the facts enabled him to make the computations necessary to his estimate of the truck's speed. The jury could not have made such a computation. In view of our case law the trial judge correctly overruled an objection that was

made before the testimony had been heard, and since the officer's estimate proved to be admissible, it is understandable why the objection was not renewed.

Fourth, the appellant charges two jurors with misconduct. As the jury was being selected the judge asked if any of the panelists had ever been represented by the plaintiff's lawyer, Michael Easley, or by Easley's partners, Knox and Baird Kinney. No juror responded. After the trial the appellant moved for a new trial, attaching the following affidavit by an attorney to show that juror Peggy Joyce Duke had been represented by the plaintiff's attorneys about two months before the trial:

> I represented Mike Zuber in connection with the sale of his house . . . to Prince F. Duke and Peggy Joyce Duke. The sale was closed in late April of 1983. The Dukes were represented by Kinney, Easley and Kinney. Both Mr. and Mrs. Duke were present at closing.

There was also proof that Mrs. Duke's husband was being represented by the Kinney firm in a pending matter in which Duke sought abatement of child support for two children by a former wife, because the children had reached their majority.

The appellant's brief quotes from our opinion in *Hot Springs St. Ry. Co.* v. *Adams,* 216 Ark. 506, 226 S.W.2d 354 (1950), where a juror deliberately concealed the fact that he was then being represented by one of the plaintiff's attorneys. On that basis we reversed the judgment, saying:

> The appellant was entitled to the information sought, as a basis for a peremptory challenge if not as a ground for challenging for cause. In these circumstances the juror's duty of candor extends well beyond a ready acquiescence in the supposition that counsel has decided not to pursue his inquiry. The very theory of an impartial jury demands that the juror take positive action to bring his possible disqualification out into the open when the question is raised.

We adhere to that position, but the present case is significantly different from that one. There the juror was called to testify at the hearing on the motion for a new trial, and it was clearly shown that his concealment had been deliberate. Here the short affidavit gives no details and leaves open the possibilities that Mrs. Duke's husband alone had dealt with the lawyers or that she did not understand that the judge's inquiry about having been represented by the firm included such out-of-court matters as a real estate transaction. All such questions could easily have been cleared up if Mrs. Duke had been called to testify at the hearing, but the appellant, having the burden of proof on the motion, failed to call Mrs. Duke or account for the failure to do so. Easley stated at the new trial hearing that he had not represented Mrs. Duke and did not know that his firm had done so until he received the motion for a new trial. Absent any showing of deliberate concealment or fraud on the part of the juror or of counsel, we are unwilling to order a new trial in the face of appellant's failure to call the one witness whose testimony might well have been decisive.

Also attached to the motion for a new trial was an affidavit signed by a member of the jury, stating that the foreman told the jury that he had gone out during the trial to see the scene of the accident for himself and that he told the jury "that the truck should have stopped in time, or something to that effect." The affiant stated that in his opinion the foreman's statement "influenced some of the jurors, especially the ladies."

Most of the affidavit was inadmissible, for Uniform Evidence Rule 606 (b) provides that "a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions." The rule does say that a juror may testify on the question whether "extraneous prejudicial information was improperly brought to the jury's attention." When Congress adopted the federal rules of evidence, after which the Uniform Rules were patterned, there was a House Judiciary Committee report referring to "extraneous prejudicial information" as being, for example, a radio broadcast or a newspaper account.

Weinstein's Evidence, Rule 606, Congressional Action (1982). When we lay aside the foreman's expression of opinion and its possible effect as being inadmissible, all that remains is that a juror, who had not been cautioned against visiting the scene, went out to a place on the public highway that was open to inspection by everyone and with which he might have been familiar. There was no extraneous information in the sense that the juror talked to anyone else when he went to the scene. Upon this point the trial court was right in refusing a new trial.

Affirmed.

Adkisson, C.J., dissents.

RICHARD B. ADKISSON, Chief Justice, dissenting. This case should be reversed because the trial court erred (1) in not granting a new trial based upon juror Peggy Joyce Dukes' untruthful response to a question from the court, and (2) in allowing a witness to give expert testimony as to the speed of one of the vehicles at the time of the accident based upon his reconstruction of the accident.

I.

On voir dire the trial court asked the jury panel if any of them had ever been represented by the plaintiff's lawyer, Michael Easley, or by Easley's partners, Knox and Baird Kinney. No juror responded. On the motion for a new trial, the proof was undisputed that juror Peggy Joyce Dukes had just recently been represented by the law firm of Kinney, Easley and Kinney. It has long been settled law in Arkansas that a juror who is not candid with the Court is guilty of misconduct which gives rise to ground for a new trial. *Zimmerman* v. *Ashcraft*, 268 Ark. 835, 597 S.W.2d 99 (1980); *Ark. State Hwy. Comm.* v. *Young*, 241 Ark. 765, 410 S.W.2d 120 (1967); *Anderson* v. *State*, 200 Ark. 516, 139 S.W.2d 396 (1940).

The majority attempts to justify this sudden departure from our heretofore consistent list of cases by quoting from

*Hot Springs Street Railway Co.* v. *Adams,* 216 Ark. 506, 226 S.W.2d 354 (1950) which supports a position they are refusing to follow in this case. Actually *Hot Springs Street Railway Co.* stands for the proposition that even the appearance of juror misconduct will be enough to warrant relief. Moreover, this court just recently reiterated its historic position, now being ignored, in *Walton* v. *State,* 279 Ark. 193, 650 S.W.2d 231 (1983) where it was held that an ambiguous question (whether a juror had personal knowledge as opposed to hearsay knowledge about the case) was sufficient to require the juror to volunteer that she had listened to a part of an earlier trial. This court reversed in *Walton,* holding that the juror had not only been less than candid with the court but had been untruthful. The holding of the majority represents inconsistency, a sharp departure from previous law, and a tendency to decide cases, not on the basis of an articulable standard of law, but on some intangible and unknown impulse.

The second point of the majority's holding is that they are unwilling to take the undisputed testimony before the trial court in arriving at its conclusion. This seems to be contrary to all of our cases requiring the juror to respond and volunteer information merely on the suggestion that a response might be needed.

## II.

Generally, automobile accident reconstruction is not an appropriate subject for expert testimony. As here, the opinion of an expert as to the speed of a vehicle depends on the supposition of too many variables. Further, the experience and mental attitude of the experimenter will substantially vary from that of the actual operator of·the accident vehicle. See *McCraney* v. *Kuechenberg,* 144 Ind. App. 604, 248 N.E.2d 171 (1969). There is, therefore, too much uncertainty to allow this testimony, particularly in view of the great weight which is ordinarily accorded expert testimony by the jury.

Expert testimony in this field of law will make negligence actions involving automobiles a contest between

450

expert witnesses which more likely will be decided for the party most able to afford the expert. In the great majority of the cases, this will give insurance companies an unnecessary but decided advantage. 2 Wigmore, Evidence 3rd Ed. § 563 and McCormick on Evidence 2nd Ed. § 17 pp. 37-41.