Essie BANKS, Guardian of Tamikia Cheatem, a Minor;
and Doris Collins, Guardian of Mary Gibson, a Minor *v.*
Linda Marie JACKSON

92-748                                                848 S.W.2d 408

Supreme Court of Arkansas
Opinion delivered March 1, 1993

*Wilson & Associates*, by: *J.L. Wilson*, for appellants.

*Daggett, Van Dover & Donovan*, by: *Robert J. Donovan*, for appellee.

ROBERT L. BROWN, Justice. The appellants, who brought this suit as guardians on behalf of two minors, Tamikia Cheatem and Mary Gibson, raise essentially two issues in this appeal from a verdict in favor of the appellee, Linda Marie Jackson. The first

issue has to do with whether an accident reconstructionist can testify in a matter where there were eyewitnesses to the wreck involving the minor girls and Jackson. The second concerns whether the circuit court erred in refusing the introduction of certain hospital records relating to the minors' injuries. We conclude that there was no abuse of discretion by the circuit court in either instance, and we affirm.

On May 28, 1987, Tamikia Cheatem and Doris Collins, who were thirteen at the time, were riding double on the seat of a bicycle near West Side Elementary School in West Helena. A collision occurred involving their bicycle and a vehicle driven by Jackson. Tamikia Cheatem and an eyewitness, Caletter Greer, who was age sixteen at the time, testified that the appellants were hit from behind by Jackson. Jackson testified that the girls ran a stop sign and hit the side of her car. The minor girls were thrown from the bike and injured. Subsequently, the appellants, Essie Banks and Doris Collins, were appointed guardians for both girls, and they filed a complaint in that capacity, alleging that Jackson was negligent in causing the accident. Various injuries, as well as physiological and psychological impairments, were asserted. The appellants sought $475,000 in damages for Tamikia and $300,000 for Mary.

At trial four years later, conflicting eyewitness testimony was given by Tamikia Cheatem and Caletter Greer on the one hand and Jackson on the other. (Mary Gibson could not recall the facts of the accident.) Four days before trial, the appellants filed a motion in limine to prevent the testimony of Dr. Larry Williams, an accident reconstruction expert hired by Jackson. The motion was denied at trial, and Dr. Williams testified. The appellants also attempted to introduce the complete hospital record regarding treatment of the girls' injuries, which had not been made available to either side until the first day of the trial. The circuit court sustained Jackson's objection to the hospital records on the basis that they were provided too late. The jury found for Jackson, and judgment was entered dismissing the complaint with prejudice.

The primary issue raised by the appellants concerns the propriety of the testimony of the accident reconstructionist. Initially, the appellants contend that they were advised too late

that the defense planned to call Dr. Williams as an expert witness. More specifically, they argue that Jackson failed to respond to a 1989 interrogatory regarding the identity of the accident reconstructionist and the substance of his expected testimony until four days before trial which began on November 19, 1991.

The record reflects that the supplemental answers supplied by Jackson identifying Dr. Williams were dated November 4, 1991, and mailed to counsel for appellants, according to the certificate of service, that same day. They were filed on November 6, 1991, nearly two weeks before the trial began. While we cannot pinpoint from the record with any certainty the exact date when the appellants received the supplemental answers, in the due course of business it should have been well before November 19, 1991. We cannot agree that the circuit court abused its discretion in admitting this testimony.

In this regard it undoubtedly would have been preferable for Jackson to have disseminated the information earlier than she did. Still, Dr. Williams was made available to the appellants for deposition, either in person or by telephone, before trial. The appellants did not avail themselves of the opportunity to depose Williams and present no compelling reason for why they did not do so. Last-minute depositions are not unique in trial preparation, although admittedly this practice can be abused. In this case, however, we detect no evidence of abuse.

The supplemental answers included the following information about Dr. Williams's expected testimony:

> Dr. Williams has been asked to review all depositions, pleadings and evidence in the case and to give an opinion as to how the incident occurred and the relative speeds of the vehicles. Dr. Williams is of the opinion that the damage to the 1983 Cougar operated by Linda Jackson was struck on the right-hand side by the bicycle operated by the plaintiffs at an approximately 90 degree angle.

This information easily satisfies the requirements of Ark. R. Civ. P. 26(e)(1), which specifies that supplementation of responses include, "in the case of expert witnesses, the subject matter on which he is expected to testify, and the substance of his testimony."

■■ The heart of the appellants' argument on the testimony of the accident reconstructionist is their assertion that the circuit court erred in allowing the testimony of such an expert under the facts of this case. The appellants are correct in noting that, as a general rule, attempts to reconstruct accidents by means of expert testimony are viewed with disfavor by this court. *Drope* v. *Owens*, 298 Ark. 69, 765 S.W.2d 8 (1989); *B. & J. Byers Trucking, Inc.* v. *Robinson*, 281 Ark. 442, 665 S.W.2d 258 (1984). Nevertheless, the general rule has been liberalized since the first enactment of the Uniform (now Arkansas) Rules of Evidence in 1976.[1] *Drope* v. *Owens, supra*; *McElroy* v. *Benefield*, 299 Ark. 112, 771 S.W.2d 274 (1989); *Price* v. *Watkins*, 283 Ark. 502, 678 S.W.2d 762 (1984). Specifically, this court has consistently recognized exceptions to the general rule where it appears that a particular situation is beyond the jurors' ability to understand the facts and draw their own conclusions. *See Drope* v. *Owens, supra*; *Price* v. *Watkins, supra*. Under Ark. R. Evid. 702, the test for admissibility was liberalized to include situations where specialized knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue." *See also McElroy* v. *Benefield, supra*; *B. & J. Byers Trucking, Inc.* v. *Robinson, supra*. Whether a particular case should be governed by the general rule or should be treated as an exception is a matter within the trial judge's discretion. *Drope* v. *Owens, supra*; *McElroy* v. *Benefield, supra*.

Although the appellants cite *Drope* v. *Owens, supra*; *B. & J. Byers Trucking, Inc.* v. *Robinson, supra*; *Price* v. *Watkins, supra*; and several other cases handed down after the original enactment of the Rules of Evidence in 1976, they rely principally upon earlier authorities such as *Waters* v. *Coleman*, 235 Ark. 559, 361 S.W.2d 268 (1962); *Henshaw* v. *Henderson*, 235 Ark. 130, 359 S.W.2d 436 (1962); and *Conway* v. *Hudspeth*, 229 Ark. 735, 318 S.W.2d 137 (1958). Our focus in all three of the earlier cases was to assess whether the opinion testimony of state police officers was inappropriate on the basis that there was no evidence to indicate

---

[1] In 1986, the Uniform Rules of Evidence enacted by the Arkansas General Assembly in 1976 were invalidated as improperly enacted. *Ricarte* v. *State*, 290 Ark. 100, 717 S.W.2d 488 (1986). That same date this court adopted the Rules *in toto* as the Arkansas Rules of Evidence.

that it was beyond the jury's ability to understand the facts and draw its own conclusion. In all three cases we concluded that the state police testimony was not warranted. In *Waters* v. *Coleman, supra,* for example, we said that where there were seven eyewitnesses engaged in a "swearing match" over uncomplicated facts, the jury was able to draw its own conclusions without the importation of expert opinion which amounted to a comment on the weight of the evidence.

■      However, with the enactment of Rule 702 the emphasis of our inquiry became not whether the jury could ultimately understand the evidence but whether the expert could assist the jury in that endeavor. This provided a broader, more expansive window for the admissibility of reconstructionist testimony. Moreover, we have held since *Waters* v. *Coleman* that the existence or non-existence of eyewitnesses in a given case is not controlling on whether a reconstructionist might testify but only a factor to be considered by the trial court. *Drope* v. *Owens, supra.*

Since the enactment of Rule 702, we have agreed with the trial court in one case that the testimony of an expert was not necessary because the speed of a motorcycle was not beyond the comprehension of the jurors. *Drope* v. *Owens, supra.* On the other hand, in *McElroy* v. *Benefield, supra,* we upheld the trial court's decision to admit an expert's testimony where the reconstructionist evaluated skid marks, observed the displacement of and damage done to vehicles, and measured distances in order to arrive at speed estimates. We said there: "We have no difficulty in deciding that [the expert's] testimony served to aid the jury in its understanding of the evidence in this cause." 299 Ark. at 115, 771 S.W.2d at 276.

In the case before us now, the three eyewitnesses who testified offered statements that, in the words of the *McElroy* opinion, were "at extreme odds." 299 Ark. at 114, 771 S.W.2d at 275. Tamikia Cheatem stated that the bicycle was ahead of the appellee's car when the collision occurred. Caletter Green testified that she "heard a car coming fast" and maintained that the automobile struck the bicycle, which was traveling in the same direction. Linda Jackson stated that the girls were traveling toward her and that "they just came into my car." The other injured girl, Mary Gibson, did not recall the circumstances of the

accident. There were also significant areas of dispute concerning the nature of the damage sustained by both the car and the bicycle and the relative speed of the two and the impact of the bodies of the two girls on the car. Dr. Williams offered detailed testimony on these matters, with attention to the absence of damage to the front of Jackson's car and the location of the initial contact point "just in front of the right front wheel." He discussed the forward momentum of the bicycle and its riders upon impact and maintained that the damage to the bicycle and car was inconsistent with the claim that the car had run into the bicycle from behind.

■ Unlike the rather straightforward situation in *Drope* v. *Owens, supra,* where only the speed of a motorcycle was at issue, here a number of factors came into play, as well as directly contradictory testimony from the persons involved in the collision and one eyewitness. Dr. Williams, without question, assisted the jury in analyzing the physical evidence. In this instance, the reconstructionist satisfied the criteria of Ark. R. Evid. 702 by aiding the jury in understanding the evidence. Hence, the circuit court did not abuse its discretion in allowing the expert to testify.

■ The appellants also contend that Dr. Williams testified outside the scope of his expertise and that this was prejudicial error. They premise this argument on the fact that he had not visited the accident site, had not seen the actual vehicle involved in the accident — only photographs — and had first seen the bicycle just before the trial. In overruling the appellants' objection, the circuit court noted that such observations were better suited for cross-examination than admissibility, and the appellants' attorney was afforded the opportunity to attack the expert's credibility. There was no error in this ruling.

For their second point, the appellants urge that the circuit court should have allowed them to introduce into evidence the complete medical records on the two girls from LeBonheur Children's Medical Center which were received by the attorneys for the parties the first day of the trial. Jackson objected on the basis that the appellants had failed to comply with her interrogatory demand to "identify each and every document and other writing that you intend to introduce into evidence . . ." and had further failed to supplement the response as required by Ark. R.

Civ. P. 26(e). The circuit court sustained this objection, but assessed no blame against the appellants for this delay.

The case of *Dunlap* v. *Buchanan*, 293 Ark. 179, 735 S.W.2d 705 (1987), cited by the appellants, states that the language of Ark. R. Civ. P. 26(e)(2)(B) gives the trial court considerable latitude to excuse failure to supplement when the response to an answer changes, and it requires at least a passive concealment before any imposition of a sanction by the court. In the case before us, however, there was no finding of concealment by the appellants, passive or otherwise.

■■ The trial court does have broad discretion in matters pertaining to discovery, and that discretion will not be second-guessed by this court absent an abuse of discretion that is prejudicial to the appealing party. *Morris* v. *Cullipher*, 306 Ark. 646, 816 S.W.2d 878 (1991). Because there was no concealment by the appellants in this matter, the sanction imposed on the appellants in disallowing the exhibit may well have been error. Nevertheless, the jury returned a verdict in favor of Jackson. Because there was no liability assessed against Jackson, the issue of the medical treatment provided to the girls became irrelevant. Accordingly, we have difficulty discerning how the appellants were prejudiced by the court's refusal to admit the complete hospital file into evidence. The appellants show us no basis for prejudice, and we note that they presented significant physician testimony to the jury as well as abbreviated hospital records. Without prejudice to the appellants, there is no basis for reversal.

Affirmed.