Royce Everette DAVIS *v.* STATE of Arkansas

CR 87-79                                              739 S.W.2d 150

Supreme Court of Arkansas
Opinion delivered November 9, 1987

*Larry D. Vaught,* for appellant.

*Steve Clark,* Att'y Gen., by: *Clint Miller,* Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Appellant Royce Davis was convicted of murder in the first degree and possession of a controlled substance. He was sentenced to forty years for murder and ten years for possession. On appeal he challenges the validity of an arrest warrant issued for his arrest and the rejection by the trial court of an instruction on the defense of insanity.

On April 23, 1986, Mike Hardin was shot and killed in a beauty salon in Little Rock. The next day, based on descriptions of eyewitnesses and on information supplied by a friend of the appellant, the Little Rock police obtained an arrest warrant for appellant's arrest for first degree murder. The warrant was issued by the clerk of the Little Rock Municipal Court on the basis of an information filed by the prosecutor in accordance with A.R.Cr.P. Rule 7.1(c). Pursuant to the warrant, appellant was arrested at a Little Rock motel and charged with murder and possession of cocaine. He moved to suppress the evidence based on an invalid arrest warrant and the motion was denied.

Appellant first argues the trial court erred by denying his motion to suppress evidence which was seized pursuant to an

invalid arrest warrant, issued on the basis of A.R.Cr.P. Rule 7.1(c). Rule 7.1(c) provides:

> The clerk of a court or his deputy may, when authorized by the judge of that court, issue an arrest warrant upon the filing of an information or upon affidavit sworn to by the complainant and approved by the prosecuting attorney. Any such information or affidavit shall be indorsed by the prosecuting attorney approving the issuance of the warrant.

Appellant argues that under *Shadwick* v. *City of Tampa*, 407 U.S. 345 (1972) and as more recently discussed in *Fairchild* v. *Lockhart*, No. PB-C-85-282 (D.C. Ark. Sept. 11, 1987), constitutional requirements are such that a warrant issued under Rule 7.1(c) must be issued by a detached, neutral officer who makes an independent determination of probable cause. We agree and we so held in *Webb* v. *State*, 269 Ark. 415, 601 S.W.2d 848 (1980), as the district court noted in the *Fairchild* case.

Here the warrant requirements were not met. The arrest warrant shows only that it had been issued by the clerk of the Little Rock Municipal Court upon the presentation of a prosecutor's information. There is nothing to indicate the warrant was issued or approved by a judicial officer as we found was necessary in *Webb, supra*, and we cannot assume that such was the case. *Id.*

Nor can we expand the holding in *Shadwick, supra* as the state suggests. There, the court found on the basis of specific statutes and procedures that a clerk was competent and sufficiently detached and neutral to make probable cause determinations on "common offenses" covered by a municipal code. At issue here is the power of the clerk to have general authority over arrest warrants. Given our holding in *Webb*, we are unwilling to expand the holding in *Shadwick* beyond the circumstances of that case in order to find the warrant valid in this case. Furthermore, the supporting affidavit in this case was insufficient to find probable cause. The statement in its entirety provided:

> Acting on information from a variety of witnesses, the defendant was seen at the parking lot, told people he was going to the beauty shop, and was clothed in a manner and carrying a briefcase similar to that of the suspect.

Without further circumstances surrounding the murder, the statement tells us little. The affiant may have given further information in sworn testimony at the time of the issuance of the warrant which would have made the above statement significant for determining probable cause. A.R.Cr.P. Rule 13.1; *Lunsford v. State*, 262 Ark. 1, 552 S.W.2d 646 (1977). However, there is nothing in the record reflecting such testimony and the burden is on the state to produce the necessary record to show the affidavit is in compliance with the law. *Lunsford, supra.* We find the warrant was not issued pursuant to the requirements of the law nor was it sufficient to support a finding of probable cause.

Whether the good faith defense under *United States* v. *Leon*, 468 U.S. 897 (1984) is available to the state is not necessary to a determination of this case. See *Fairchild, supra.* For even if the warrant must fail, the arrest itself is valid as it was supported by probable cause. *Allen* v. *State*, 277 Ark. 380, 641 S.W.2d 710 (1982). Detective Ivan Jones obtained the arrest warrant. His information came primarily from Ricky Croon, a friend of appellant. Jones obtained additional information from witnesses at the scene of the crime and from an undercover officer.

The murder took place about 11:00 a.m. at a beauty salon in the Colony West Shopping Center where the victim, Mike Hardin, was employed. The day after the shooting Ricky Croon contacted the police department to say that he had gone to appellant's house off Barrow Road about 10:00 a.m. the morning of the murder. Appellant asked Croon to take him to the shopping center which he did. Appellant told Croon he would be about twenty minutes and said "something about a beauty shop around the corner." Croon did some shopping and returned to his car about twenty to thirty minutes later and appellant was waiting for him. Croon then dropped him off at La Quinta Motel. Croon stated that earlier appellant had told him he thought his wife was having an affair with Mike Hardin. Croon thought appellant "wanted to get even." Croon described appellant as a very average looking black man in his mid-thirties, about 145 lbs., 5'6"-5'7" and light-complected. On the day of the shooting, Croon said appellant was wearing gray warm-up pants and was carrying a black briefcase.

Witnesses to the murder gave varying descriptions of the

assailant, but the general composite description was of a black man in his twenties to thirties, light or medium complected, about 150-170 lbs., 5' 5" to 5'10" tall and wearing gray clothes or a gray warm-up suit and carrying a black briefcase.

Officer Tappan was an undercover narcotics agent and talked to Jones about 8:00 o'clock on the evening of the murder. Tappan told Jones he thought appellant was a suspect because of drug usage, because of conversations Tappan had had with appellant's wife, because appellant matched the description of the suspect given by witnesses, and because appellant frequently carried a black briefcase. In sum, the police knew appellant was taken to the shopping center at about the time of the murder, that appellant indicated he was going to the particular shop where the murder occurred, that descriptions of the assailant matched that of appellant, specifically the clothes he was wearing that day, plus the black briefcase he had with him at the time. Coupled with the foregoing was the possible motive, i.e. the victim's involvement with appellant's wife. The undercover agent had expressed interest in appellant as a suspect based on conversations he had had with appellant's wife. These circumstances provided probable cause and the arrest can be sustained on that basis alone. *Allen* v. *State, supra.*

Appellant also argues that the trial court erred by refusing to instruct the jury on the defense of mental disease or defect. The defense requested the following instruction found in Ark. Stat. Ann. § 41-601:

> It is an affirmative defense to a prosecution that at the time the defendant engaged in the conduct charged, he lacked capacity, as a result of mental disease or defect, to conform his conduct to the requirements of law or to appreciate the criminality of his conduct.

Appellant's defense was that at the time of the murder he was suffering from cocaine psychosis which he contends brings him within the statute. Relying on testimony of several lay witnesses and one expert witness, appellant argues there was a sufficient factual basis from the testimony to justify the giving of the instruction.

A party is entitled to an instruction on a defense if there

is sufficient evidence to raise a question of fact, *Lair* v. *State*, 19 Ark. App. 72, 718 S.W.2d 467 (1986); *Hill* v. *State*, 253 Ark. 512, 487 S.W.2d 624 (1972), or if there is any supporting evidence for the instruction. *Riggins* v. *State*, 17 Ark. App. 68, 703 S.W.2d 463 (1986); *Johnson* v. *State*, 252 Ark. 113, 482 S.W.2d 600 (1972).

Here, there was essentially no conflict in the testimony that would raise a question of fact as to appellant's sanity, rather, it is a question of whether there was any supporting evidence for the requested instruction. From what was presented, we can find insufficient evidence to support the requested instruction. The expert witness, a psychologist, went into some detail describing cocaine psychosis, and how it developed. However, nothing in his testimony indicated that a person who had the disease would lack the capacity to conform his conduct to the requirements of law or to appreciate the criminality of his conduct. He described four progressive stages, the fourth being the psychosis stage. The three prior stages involved certain physical symptoms such as increased heart rate and blood pressure and certain mental symptoms such as being energized, lethargic, apathetic, irritable, diminished ability to concentrate and so on. In the last stage of the psychosis, afflicted individuals will begin to experience hallucinations.

Even if we were to agree that the psychosis would qualify, there is not sufficient evidence to show that appellant was so afflicted. The doctor was asked a hypothetical question:

> If a person used cocaine regularly for a period of time and was snorting it originally but then started smoking it and over a three or four day period smoked it almost continuously, getting little or no sleep during this period of time, eating very little during this period of time and during this time he was observed as becoming increasingly paranoid, had delusions, committed an extremely violent act, *would that in your professional opinion describe a cocaine psychosis and the result of that cocaine psychosis?*

The doctor answered that it would, and was not consistent with any other explanation. However, the evidence does not support the hypothetical question. There was testimony that appellant had started to use cocaine about four months before the murder, but there was no testimony on the frequency of his use or to the

effect that he was a heavy user. Witnesses expressed their concern that they knew he was smoking, but it was not in relationship to his heavy use, but just his using it at all. There was no evidence that appellant smoked almost continuously for three to four days before the murder. The murder occurred on a Wednesday, and there was only testimony to his smoking cocaine on two occasions prior to the murder—he was observed smoking on the previous Saturday night and on the previous Monday. There was only scant reference to appellant's lack of sleep or food prior to the murder.

There was testimony by appellant's witnesses that he had become increasingly moody, irritable, withdrawn and nervous. There was no testimony that he was suffering hallucinations prior to the murder. Appellant makes reference to the record, but in the cited testimony witnesses refer to incidents at a time after appellant was out on bond for the murder.

Appellant's case is similar to that of *Briggs* v. *State*, 18 Ark. App. 292, 715 S.W.2d 223 (1986), where the defendant had requested and was refused the insanity defense instruction. In *Briggs*, there was testimony by a VA therapist that the defendant had been diagnosed as having post traumatic stress syndrome and was being treated for that condition. She further testified that his symptoms included depression, suicidal ideation and flashbacks from his Vietnam combat experiences. His wife testified he was giving things away when it was indicated that others wanted them, including his own children's bicycles. The court found that with this evidence the defendant had failed to produce evidence to justify the instruction on mental disease or defect. As with the case before us, there was simply no testimony touching on the essence of the insanity instruction—the lack of capacity to conform conduct to the requirements of the law or the ability to appreciate the criminality of one's conduct. Evidence of moodiness, irritability and nervousness does not go to the substance of the instruction. There must be some indication from the evidence that the appellant lacks the appreciation that sane men have of what it is they are doing and of its legal and moral consequences. See Commentary, § 41-601. The appellant in this case failed to produce that evidence.

Affirmed.