SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY and Farm Bureau Mutual Insurance Company of Arkansas, Inc. *v.* Jesse B. DAGGETT

02-804 118 S.W.3d 525

Supreme Court of Arkansas
Opinion delivered September 25, 2003

114

*David Hodges*, for appellants.

*Wright, Lindsey & Jennings LLP*, by: *Edwin L. Lowther, Jr., Troy A. Price*, and *Justin T. Allen*, for appellee.

TOM GLAZE, Justice. In this legal malpractice lawsuit, appellants Southern Farm Bureau Casualty Insur-ance Company and Farm Bureau Mutual Insurance Company of Arkansas ("Farm Bureau") sued appellee, attorney Jesse Daggett, in Pulaski County Circuit Court, alleging that Daggett failed to perfect an appeal in an earlier Phillips County negligence lawsuit brought by Alfred Gammon against his employers, James H. Knight, Vaughn Knight, and M. H. Knight Farms, Inc. (hereinafter "the Knights" or "Knight Farms"). Daggett represented the Knights, and Gammon

obtained an $800,000 jury verdict against the Knights. The Knights had filed a timely notice of appeal from the Phillips County judgment, but Daggett later failed to lodge the record in the appeal, causing the appellate court to dismiss the Knights' appeal. This dismissal required the Knights' insurance carrier, Farm Bureau, to pay Gammon's Phillips County judgment. Farm Bureau subsequently filed this legal malpractice suit against Daggett in Pulaski County, alleging that Daggett's failure to perfect the Knights' appeal of Gammon's $800,000 judgment was the result of Daggett's negligence. Farm Bureau also alleged Daggett breached his contract with Farm Bureau because Farm Bureau had hired Daggett to render services to Farm Bureau, including the timely filing of the transcript with the appellate court.

Daggett moved for a summary judgment, contending that the only issue in Farm Bureau's malpractice suit against Daggett was a purely legal question — whether a properly perfected appeal of the judgment in Gammon's favor would have resulted in the reversal of that judgment. Farm Bureau responded, arguing that Daggett had admitted to being negligent in failing to perfect the Knights' appeal, and Farm Bureau had demonstrated that Daggett's malpractice was the proximate cause of Farm Bureau's damages, resulting in its having to satisfy Gammon's judgment. Farm Bureau also filed its summary judgment motion, asserting Daggett had not addressed Farm Bureau's allegations of breach of contract, and it asked the Pulaski County Circuit Judge, John Ward, to find Daggett had breached his contract with the Farm Bureau when he failed to timely lodge the Knights' appeal. Judge Ward granted Daggett's motion for summary judgment, concluding that, in a legal malpractice case, he must resolve the issue as one of law by deciding how the appellate court would have held if Daggett had properly docketed the Knights' appeal. Judge Ward ruled that the court of appeals would have affirmed Gammon's judgment against the Knights on appeal; thus, as a matter of law, Daggett's failure to docket the record on appeal was not the proximate cause of damages allegedly sustained by Farm Bureau. The judge further denied Farm Bureau's request for summary judgment on its breach of contract claim against Daggett. Judge Ward ruled that proof of damages was an essential element of a breach of contract claim, and Farm Bureau could not show it sustained damages as a result of Daggett's breach. The judge dismissed Farm Bureau's complaint with prejudice, and Farm Bureau brings this appeal.

For its first point on appeal, Farm Bureau suggests that the Pulaski County Circuit Court applied the wrong standard when considering Daggett's motion for summary judgment. Specifically, Farm Bureau takes issue with the court's reliance on *Sturgis v. Skokos*, 335 Ark. 41, 997 S.W.2d 217 (1998), and argues that the trial court should have applied traditional summary-judgment standards, such as the standard found in *Wallace v. Broyles*, 332 Ark. 189, 961 S.W.2d 712 (1998) (a party is entitled to summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law).

In the *Skokos* case, however, this court was presented with a case procedurally similar to the one now before us. *Skokos* was a legal malpractice action where it was alleged that an attorney was negligent for failing to file an appeal, and the matter was decided by the trial court on summary judgment. This court agreed with the trial court's approach, holding that the matter of proximate cause for failure to file an appeal is a question of law to be determined by a judge, not a jury. *Skokos*, 335 Ark. at 51. Further, the *Skokos* court quoted the Washington Supreme Court's statement that "the determination of what decision would have followed if the attorney had timely filed the [appeal] is a question of law for the judge, irrespective of whether the facts are undisputed." *Id.* (citing *Daugert v. Pappas*, 704 P.2d 600 (Wash. 1985)). *See also Anthony v. Kaplan*, 324 Ark. 52, 918 S.W.2d 174 (1996); *Tyson Foods, Inc. v. Adams*, 326 Ark. 300, 930 S.W.2d 374 (1996); *Restatement (Third) of the Law Governing Lawyers* § 53, Reporter's Note (2000).

Here, the Pulaski County court granted Daggett's motion for summary judgment once it determined that Daggett's negligence in failing to timely tender the appellate record was not the proximate cause of Farm Bureau's damages. Stated another way, the court found that, even if Daggett had properly and timely filed the record, Knight Farms would still have lost on appeal. Under the cases cited above, the trial court was entirely correct to dispose of this matter through the vehicle of summary judgment. However, as will be discussed below, the trial court erred in granting Daggett's motion for summary judgment.

Before leaving this point, we note that Farm Bureau argues that the Pulaski County court failed to enter specific findings of fact in response to Farm Bureau's request and this case

should be remanded so the trial court can do so. Farm Bureau asserts that Ark. R. Civ. P. 52(a) requires the court to find the facts specifically, if requested by a party. However, other than its reference to Rule 52, Farm Bureau cites no authority in support of its argument. We have held that we will not consider a point raised on appeal where the appellant fails to cite authority or any convincing argument supporting the point. *See Southeast Arkansas Landfill, Inc. v. State*, 313 Ark. 669, 858 S.W.2d 665 (1993); *Barnes v. Barnes*, 311 Ark. 287, 843 S.W.2d 835 (1992). Moreover, Farm Bureau does not allege any specific flaws or omissions in the trial court's order; Farm Bureau merely relates its dissatisfaction with the trial court's findings. In *Miles v. Southern*, 297 Ark. 274, 280-B, 760 S.W.2d 868 (1988), we stated that the trial court is not required to give detailed reasons for its action. Here, Judge Ward's order reflected that he had "considered each ground identified by the parties, and found that the Arkansas court of appeals would have affirmed the judgment in the underlying [Gammon v. Knight] case on appeal." For these reasons, we reject Farm Bureau's request to remand this case for further findings.

We turn now to the heart of Farm Bureau's appeal — the question of whether the Pulaski County court correctly found that the underlying Phillips County case between Gammon and the Knights would have been affirmed if Daggett had timely filed the Knights' appeal. We begin our discussion of this point by setting out the appropriate standard of review in legal malpractice cases. An attorney is negligent if he or she fails to exercise reasonable diligence and skill on behalf of his or her client. In order to prevail under a claim of legal malpractice, a plaintiff must prove that the attorney's conduct fell below the generally accepted standard of practice and that this conduct proximately caused the plaintiff damages. *Anthony v. Kaplan, supra; Callahan v. Clark*, 321 Ark. 376, 901 S.W.2d 843 (1995). To show damages and proximate cause, the plaintiff must show that, but for the alleged negligence of the attorney, the result in the underlying action would have been different. *Anthony, supra; Callahan, supra. See also* Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 30.44, at 614 (5th ed. 2000) ("At a minimum, the client must allege that the judgment would have been appealed . . . and would have been reversed but for the attorney's negligence."). In reviewing this issue, it was incumbent on the trial court to act as an appellate

court would act and review the decision under the same standard the appellate court would use. *Skokos*, 335 Ark. at 52.

In support of Farm Bureau's argument that the outcome of the underlying case would have been different, Farm Bureau urges this court to conclude that the Phillips County Circuit Court's verdict in Gammon's favor would have been reversed on appeal. Farm Bureau urges that it would have prevailed on appeal based upon the following five alleged errors of law by the trial court: 1) refusing to permit testimony from the Knights' mechanic expert, Leon Mallard; 2) refusing to allow the Knights to call their accident reconstruction expert witness, Larry Williams; 3) giving AMI 903 over Knight Farms' objections, and refusing to give AMI 901 to the jury; 4) declining to excuse a juror for cause; and 5) causing prejudice due to cumulative error. We address each of these points in turn.

■ In support of its first argument that it would have prevailed on appeal, Farm Bureau asserts that the Phillips County Circuit Court, Judge L. T. Simes presiding, erred in refusing to permit Leon Mallard to testify on behalf of Knight Farms. We review evidentiary errors under an abuse-of-discretion standard. *Arkansas Department of Human Services v. Huff*, 347 Ark. 553, 65 S.W.3d 880 (2002); *Parker v. State*, 333 Ark. 137, 968 S.W.2d 592 (1998). The trial court has broad discretion in its evidentiary rulings; hence, the trial court's findings will not be disturbed on appeal unless there has been a manifest abuse of discretion. *Id.*

At the Phillips County trial of this case, plaintiff Alfred Gammon testified that he was driving a load of rice down Highway 44. As he came to a sharp curve in the road, he testified that he applied the brakes, but he "heard nothing but air behind the cab and the truck was gone. . . . [He] had no control of the vehicle by use of the brakes." Gammon also testified that there were "a bunch of gauges on this truck that really didn't work. It had no horn. It did not have a buzzer to let you know if the air pressure was falling on it[.]" Gammon also introduced the testimony of Wayne Edwards, who stated that he examined the truck immediately after the accident, and that the brakes were "out of adjustment totally." Edwards also testified that it was his opinion that the Knights had improperly maintained the truck.

The Knights called Leon Mallard, a mechanic who worked for Knight Farms, who testified that the air brakes were "working fine" the last time he looked at the truck and that there had been "no complaints" about the truck. Mallard then stated that the last time he had "hands-on, physical contact with this vehicle [was] in May of 1994, the day before, or a couple of days before when we put the brakes and stuff on it." Daggett, as counsel for Knight Farms, then asked Mallard if he had contact with the truck on the day of the accident, September 3, 1994. Gammon's counsel objected, but Mallard continued, stating, "As far as working on it, no." The court then asked Gammon's attorney what his objection was, and counsel replied that Daggett was attempting to impeach his own witness by having Mallard contradict his own testimony. Gammon's counsel further argued that Mallard had "just testified the last contact that he had with this vehicle was a day or so before they put the brakes on it. . . . Now Mr. Daggett comes back and asks him, what contact did he have with it that day [the day of the accident]. He just testified [that] he hadn't had any contact with this truck since May, before he put the brakes on."

Daggett replied that it was crucial to his case that he be allowed to introduce Mallard's testimony that Mallard had checked the truck on the day of the accident. Daggett also explained in a subsequent proffer that Mallard would have testified that, on the morning of the accident, he started the truck; at that time, the air buzzer and pressure gauge were working, and the air pressure built up properly on the truck without any sign of a leak. Judge Simes, however, refused to permit Daggett to introduce this proffered testimony.

Mallard was permitted to testify that all of the truck's systems were working the last time he physically worked on it in May 1994, and that no one had complained about any problems with the truck from May until the day of the accident, September 3, 1994. Mallard also testified that, on the morning of the accident, he was right next to the truck and did not hear any air leaks. Mallard further explained that if the truck had lost air pressure, the "brakes would lock down. If you tried to drive it out of the field with the brakes locked down they would just choke the motor down or burn the clutch."

In this appeal, Farm Bureau contends that Daggett was improperly prevented from having Mallard explain his testimony, and that Gammon's attorney could have explored any perceived

inconsistencies on cross-examination. Farm Bureau also argues that Mallard's inability to testify about the condition of the truck before the accident constituted prejudicial error. Daggett responds that any error that might have occurred was harmless, because he was able to get the same point across to the jury with Mallard's testimony that he did not hear any air leaks immediately before the accident, and that the truck would not have operated properly with the brakes "locked down."

■ ■ As mentioned above, evidentiary rulings are not reversed unless the trial court abused its discretion. An abuse of discretion means a discretion improvidently exercised, *i.e.*, exercised thoughtlessly and without due consideration. *Ford Motor Co. v. Nuckolls*, 320 Ark. 15, 894 S.W.2d 897 (1995); *Nazarenko v. CTI Trucking Co.*, 313 Ark. 570, 856 S.W.2d 869 (1993). We first note that, to the extent the trial court agreed that Daggett could not "impeach" his own witness, such a ruling was incorrect. Under the Arkansas Rules of Evidence, the credibility of a witness may be attacked by any party, including the party calling him. Ark. R. Evid. 607 (2003); *see also Carton v. Missouri Pac. R.R.*, 303 Ark. 568, 798 S.W.2d 674 (1990).

■ Further, the effect of the trial court's exclusion of Mallard's testimony was to prevent the Knights from presenting evidence regarding the condition of the truck on the morning of the accident. Mallard's proffer made it clear that he could have provided the jury with information about the physical condition of the truck before the accident happened. As the Knights' defense was premised on their contention that the truck was properly maintained, such evidence was highly relevant. The trial court's exclusion of Mallard's testimony improperly thwarted the admission of relevant and probative evidence. This was error on the trial court's part. If the Knights' appeal had been correctly lodged, the exclusion of Mallard's proffered testimony would have been error and grounds for reversal. We reach the same conclusion when reviewing Farm Bureau's second point.

In Farm Bureau's second point, it argues the Phillips County court erred when it refused to permit Knight Farms' expert witness, Larry Williams, to testify. Williams, an accident reconstructionist, would have testified that, based on his interpretation of the skid marks left by the truck at the accident, there was no evidence of brake failure; he would also have opined that Gammon

applied his brakes too late into the curve to be able to control his truck. Prior to trial, Gammon filed a motion in limine seeking to exclude Williams's testimony, contending that Williams would only be offering evidence about the speed of the truck, a subject on which there would be no need for expert testimony. The Knights rejoined that Williams would not just be testifying about speed, but would also offer opinions and testimony concerning the existence and interpretation of skid marks, scuff marks, and roll-over marks at the accident scene; the issue of whether or not the braking system on the truck failed that day; and whether or not Gammon failed to maintain proper control over the truck at the time of the accident. Judge Simes granted Gammon's motion, finding that speed was not an issue too convoluted that the jury could not make its own determination from other evidence.

■■■ Judge Simes's ruling on this question was also an abuse of discretion. It is true that, in the past, this court held that attempts to reconstruct accidents by means of expert testimony were viewed with disfavor. *See B & J Byers Trucking, Inc. v. Robinson,* 281 Ark. 442, 665 S.W.2d 258 (1984); *Reed v. Humphreys,* 237 Ark. 315, 373 S.W.2d 580 (1964); and other cases cited in *Drope v. Owens,* 298 Ark. 69, 72, 765 S.W.2d 8 (1989). However, in the *Drope* case, this court pointed out that it has also consistently recognized exceptions to this general rule where it appears that a particular situation is beyond the jurors' ability to understand the facts and draw their own conclusions. *Drope,* 298 Ark. at 73 (citing *Price v. Watkins,* 283 Ark. 502, 678 S.W.2d 762 (1984); *B & J Byers Trucking, Inc. v. Robinson,* supra; *Wright v. Flagg,* 256 Ark. 495, 508 S.W.2d 742 (1974); and *Woodward v. Blythe, Adm'r,* 249 Ark. 793, 462 S.W.2d 205 (1971)). The *Drope* court further stated the following:

> It has been said that under Uniform [now Arkansas] Evidence Rule 702 the question is whether specialized knowledge will assist the jury to understand the evidence or determine a fact issue. *B & J Byers Trucking, Inc. v. Robinson, supra.* Whether or not a particular case should be governed by the general rule or should be treated as an exception thereto, is a matter within the trial judge's discretion to be upheld on appeal absent an abuse of that discretion. *Price v. Watkins, supra;* B & J Byers Trucking, Inc. v. Robinson, supra; and *Parker v. State,* 268 Ark. 441, 597 S.W.2d 586 (1980).

*Drope,* 298 Ark. at 73.

Since the *Drope* case, this court has had the opportunity to reexamine the admissibility of accident reconstruction testimony on several more occasions. In *McElroy v. Benefield*, 299 Ark. 112, 771 S.W.2d 274 (1989), the court affirmed the trial court's decision to permit such testimony. There, the officer who investigated the accident scene was unable to determine the exact speed of the vehicles. However, the expert clarified the speed of the vehicles by looking at the skid marks, examining the displacement of the vehicles, and measuring distances; he was also able to dispute eyewitnesses' testimony that the vehicles appeared airborne at the time of the crash. Because this testimony "served to aid the jury in its understanding of the evidence," *McElroy*, 299 Ark. at 115, the court concluded that the trial court did not abuse its discretion in permitting the testimony.

Likewise, in *Banks v. Jackson*, 312 Ark. 232, 848 S.W.2d 408 (1993), the court held that the accident reconstructionist's testimony was properly admitted where the testimony of other eyewitnesses was "at odds." *Banks*, 312 Ark. at 237. The court noted that there were "significant areas of dispute concerning the nature of the damage sustained," and pointed out that the expert offered "detailed testimony" on these matters. *Id.* at 238. Because the expert was clearly able to assist the jury in analyzing the physical evidence, this court held that the trial court did not abuse its discretion in allowing the accident reconstruction expert to testify.

Finally, in *J.B. Hunt Transport, Inc. v. Doss*, 320 Ark. 660, 899 S.W.2d 464 (1995), the court again affirmed the trial judge's ruling to exclude testimony by the accident reconstruction expert offered by the defendant, J.B. Hunt. This court appeared to place great emphasis on the trial court's reasoning, noting that the lower court had emphasized the fact that the photographs used by the expert to reconstruct the accident scene did not show the entire area around the crash. In concluding that the trial court did not err, this court wrote as follows:

> In all evidentiary matters, the trial judge must be afforded broad latitude because he or she alone is in the best position to decide what evidence would aid the jury and what would confuse the issues. *Firestone Tire & Rubber Co. v. Little*, 276 Ark. 511, 639 S.W.2d 726 (1982). Unless the trial judge is clearly wrong, we will not substitute our judgment for his or hers. *Id.*

*J.B. Hunt,* 320 Ark. at 666-67.

In the present case, the Phillips County court was clearly wrong. The Knights' proffer of Williams's testimony made it abundantly clear that Williams would not be offering his expert opinion solely on the issue of how fast Gammon was driving. Rather, Williams's proffered testimony contained his opinion that the 123 feet of straight skid marks left by the tractor-trailer at the scene of the accident showed that the brakes on both the left and right sides of the axle were braking equally, and that the straight marks also showed that the brakes on the tractor and the brakes on the trailer were both working properly. If the brakes on one had gone out, Williams stated, the trailer would most likely have jack-knifed. From the skid marks, Williams opined that the reaction of the driver was too late; it was "an attempt to make a panic stop. For whatever reason, [Gammon] got too close to the curve before slowing down or attempting to slow down because he was still going beyond the capacity of the truck to follow the curvature of the road when he got into it." Williams's ultimate opinion was that the brakes on the truck were working properly, and did not fail.

This accident reconstruction testimony obviously went far beyond the question of speed. None of the lay witnesses who testified about the truck's speed could have offered similar testimony about what the skid marks indicated, and certainly none could have offered an opinion about the efficacy of the brakes. An expert may offer testimony if his or her "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Ark. R. Evid. 702. Clearly, Williams's testimony would have assisted the jury in determining the ultimate question in the case — whether the truck's brakes failed — and the trial court oversimplified the matter in ruling that Williams's entire expert testimony was inadmissible. Had this case been properly appealed, Gammon's verdict would have been reversed on this issue.

Farm Bureau's third argument is that the trial court erred in refusing to instruct the jury on the common law rules of the road, *see* AMI Civ. 4th 901, and in giving Gammon's requested AMI Civ. 4th 903. AMI 901 describes a driver's duty to look out for other vehicles, to keep his vehicle under control, and to drive at a speed that is reasonable and prudent under the circumstances.

Farm Bureau argues that this would have been a proper instruction that would have informed the jury regarding Knight Farms' theory of the case.

In arguing to Judge Simes that the jury should be given AMI 901, the Knights asserted that there was, at the least, circumstantial evidence that Gammon was driving too fast at the point the road curved. When Judge Simes asked what evidence he had of Gammon driving at a speed greater than what was reasonable, Daggett, as counsel for the Knights, conceded that the judge had excluded such evidence when the judge disallowed all of Larry Williams's testimony. Gammon's counsel responded that there was no evidence that Gammon was "driving" too fast, but there was evidence that the vehicle was "going" too fast, and that this speed was due to the fact that the brakes failed. Judge Simes ruled that he would not give AMI 901 because there had been no evidence that Gammon had been speeding at the time of the accident. His ruling was erroneous.

This court has consistently held that a party is entitled to a jury instruction when it is a correct statement of the law, and there is some basis in the evidence to support giving the instruction. *Barnes v. Everett*, 351 Ark. 479, 95 S.W.3d 740 (2003); *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001); *Coca-Cola Bottling Co. v. Priddy*, 328 Ark. 666, 945 S.W.2d 355 (1997); *Davis v. State*, 293 Ark. 472, 739 S.W.2d 150 (1987) (a party is entitled to have the jury instructed on his theory of the case). This court will not reverse a trial court's refusal to give a proffered instruction unless there was an abuse of discretion. *Barnes, supra.* Furthermore, it is not error for the trial court to refuse a proffered jury instruction when the stated matter is correctly covered by other instructions. *Dodson*, 345 Ark. at 459.

Here, the AMI 901 instruction was a correct statement of the law, but Judge Simes refused to give it because there was no evidence that Gammon was speeding. However, AMI 901(C) provides, "It is the duty of a motor vehicle to drive *at a speed no greater than is reasonable and prudent under the circumstances*, having due regard for any actual or potential hazards." (Emphasis added.) Here, the only reason there was no evidence that Gammon was speeding as he entered the curve was because the trial judge refused to permit Farm Bureau's expert, Larry Williams, to testify to that effect. Williams's proffer reflects he would have testified, if

allowed, that his theory of the case was that Gammon simply "ran up to the curve too fast and Gammon's brake reaction time did not allow Gammon to stop." Williams further averred that the first skid marks on the ground showed Gammon's brake application was too late and was his attempt to make a "panic stop." In refusing all of AMI 901, the judge compounded his error by also excluding 901(B), which would have instructed the jury that Gammon had a duty to keep his vehicle under control. The trial judge's refusal to instruct the jury on the Knights' theory of the case was an abuse of discretion.

Farm Bureau also argues that the trial court should not have given AMI 903 to the jury, because it was an abstract instruction. AMI 903 provides that violation of a statute, "although not necessarily negligence, is evidence of negligence to be considered by [the jury] along with all of the other facts and circumstances in this case." The statute referenced in the instruction as given was Ark. Code Ann. § 27-37-501 (Repl. 1994), which provides that vehicles must be equipped with brakes adequate to control the movement of and to stop and hold the vehicle, including two separate means of applying the brakes. Section 27-37-501 also includes a requirement that all trucks of a certain size be equipped with brakes, and provides that the parking brake or brakes on a truck "shall be so designed, constructed, and maintained that when once applied they shall remain in the applied condition with the required effectiveness[.]" Knight Farms objected to AMI 903 at trial, arguing that there had been no proof that the truck driven by Gammon did not meet these statutory requirements. The trial court gave the instruction over Knight Farms' objection, finding that there was evidence about the maintenance and effectiveness of the brakes, and that there were multiple systems that were supposed to stop the truck.

 Jury instructions must be based on the evidence in the case, and instructions that reference matters on which no evidence was presented should not be used. *Arthur v. Zearley*, 337 Ark. 125, 992 S.W.2d 67 (1999). In *Parker v. Holder*, 315 Ark. 307, 867 S.W.2d 436 (1993), this court held that instructions stating only abstract legal propositions should not be given. *Parker*, 315 Ark. at 314 (citing *Davis v. Davis*, 313 Ark. 549, 856 S.W.2d 284 (1993)). *See also Pettus v. McDonald*, 343 Ark. 507, 36 S.W.3d 745 (2001) (jury instructions stating abstract legal propositions without any evidentiary basis should not be given). Further, prejudice will

be presumed from the giving of an erroneous instruction unless some additional factor makes it clear that the erroneous instruction was harmless. *Arthur, supra; Dillard Dep't Stores, Inc. v. Adams,* 315 Ark. 303, 867 S.W.2d 442 (1993).

In this case, there was no evidence whatsoever that the truck was not properly equipped with the brakes required by § 27-37-501. Therefore, the AMI 903 instruction referenced matters on which no evidence was presented, and it was error for the court to approve it. There are no additional factors that make it clear the giving of this erroneous instruction was harmless; in fact, the refusal to give AMI 901 only made the situation worse, as it implied to the jury that there was nothing wrong with Gammon's driving and that the fault lay in not providing proper brakes. We cannot say this error was harmless, and we conclude that, had this case been properly appealed, the verdict against the Knights would have been reversed.

Farm Bureau's next point is that Judge Simes erred by refusing to allow Knight Farms to strike a juror for cause, when that refusal caused Knight Farms to exercise all of its peremptory challenges and forced it to accept another juror that it otherwise would have challenged. During voir dire, potential Juror Sykes asserted that he was related to Jimmie Wilson, one of Gammon's attorneys. Upon questioning, he stated his belief that he was Wilson's cousin "on down the line," and was somehow related by marriage. Wilson clarified that Sykes's aunt was married to Wilson's uncle in 1953, but they divorced in 1959, and the uncle had since died. Later during voir dire, potential Juror Hunt disclosed that his wife worked for one of Gammon's attorneys. The trial court denied the request to strike Hunt for cause, and Knight Farms used a peremptory challenge to remove him. At the conclusion of the trial, after the jury had been instructed, Daggett asked the court to excuse Juror Sykes, noting that he would have used a peremptory challenge on this juror, but was unable to do so because the court forced him to use his last peremptory challenge on Juror Hunt. The judge declined to do so, and Farm Bureau now asserts that, had this issue been raised on appeal, the appellate court would have reversed on this point.

Farm Bureau's argument is without merit, as there would have been no basis for excusing Juror Sykes for cause. To preserve for appeal an objection to an empaneled juror, a party is required

to have exhausted his or her peremptory challenges and must show that he or she was forced to accept a juror *who should have been excused for cause. Berry v. St. Paul Fire & Marine Ins. Co.*, 328 Ark. 553, 944 S.W.2d 838 (1997) (emphasis in original). Here, there would have been no reason to excuse Juror Sykes for cause, because he was not related to any party or attorney in the case within the fourth degree of consanguinity or affinity. *See* Ark. Code Ann. § 16-31-102(b)(1) (Repl. 1999). Even if Sykes's aunt had not divorced Wilson's late uncle forty-plus years prior to this trial, this court has held that there is no affinity between the blood relations of the husband and the blood relations of the wife. *Mitchell v. Goodall*, 297 Ark. 332, 761 S.W.2d 919 (1988) (citing *North Arkansas & Western Ry. Co. v. Cole*, 71 Ark. 38, 70 S.W. 312 (1902)). There was no affinity between Sykes and Wilson, so Sykes would not have been excused for cause. The trial court's refusal to excuse Juror Hunt for cause, so that the Knights could exercise a peremptory challenge on Sykes, was not an abuse of discretion.

 Finally, Farm Bureau raises a cumulative error argument, contending that Knight Farms was denied a fair trial because of the cumulative effect of the trial court's prejudicial rulings. An appellant asserting a cumulative-error argument must show that there were individual objections to the alleged errors and that the cumulative error objection was made to the trial court and a ruling was obtained. *Edwards v. Stills*, 335 Ark. 470, 984 S.W.2d 366 (1998). At the conclusion of the trial, Daggett moved for mistrial, stating that the basis "is a cumulative motion." The trial court denied the motion. On appeal, Farm Bureau points to four particular alleged errors and claims they added up to cumulative error: 1) the issue of spoliation; 2) the exclusion of an air chamber test; 3) the exclusion from evidence of an air board; and 4) the trial court's bias against defense counsel.

With respect to the issue of spoliation, Farm Bureau argues that the trial court improperly admitted testimony and evidence that the truck involved in the accident was destroyed, and the effect of this testimony was to permit an improper inference that Knight Farms destroyed its truck in an attempt to hide something. The accident in this case occurred on September 3, 1994; Gammon's expert witness, Wayne Edwards, examined the truck that same day and videotaped his inspection of the vehicle. The truck was subsequently salvaged. During trial, Gammon's attorneys frequently asked questions regarding the destruction of the truck.

In response to an inquiry as to whether Kenneth Knight had destroyed the vehicle, Knight Farms moved for a mistrial, which the court denied.

Farm Bureau now argues that the repeated references to the destruction of the truck was prejudicial and irrelevant, and contends that the trial court should have granted Knight Farms' motion for mistrial. However, this court has repeatedly held that mistrial is a drastic remedy that should only be granted (1) when there has been error so prejudicial that justice could not be served by continuing the trial or (2) when the fundamental fairness of the trial has been manifestly affected. *J. E. Merit Constructors, Inc. v. Cooper*, 345 Ark. 136, 44 S.W.3d 336 (2001); *Farm Bureau Mut. Ins. Co. v. Foote*, 341 Ark. 105, 14 S.W.3d 512 (2000); *Arthur v. Zearley*, 337 Ark. 125, 992 S.W.2d 67 (1999). The trial court has wide discretion in granting or denying a motion for mistrial, and that decision will not be disturbed on appeal absent an abuse of discretion or manifest prejudice to the movant. *Id.*

Here, in denying Daggett's motion, the trial court noted that similar testimony had already been introduced without objection. Thus, any subsequent evidence would simply have been cumulative. Further, Judge Simes refused to give the jury Gammon's requested instruction on spoliation, thus circumventing the jury's consideration of the issue during its deliberations. Therefore, no prejudice resulted from the trial court's denial of Daggett's motions for mistrial on the issue of spoliation.

Farm Bureau's second issue under its cumulative error argument is that the Phillips County Circuit Court erred in excluding the results of a test performed on one of the truck's brake chambers by Knight Farms' brake expert, Dennis Collins. This "air test" was intended to demonstrate that the Knights' truck's brakes would not have failed in the manner suggested by Gammon's theory of the case. Collins had performed the air test on the brake chamber in November of 1998, and Daggett offered to let Gammon's attorneys run the same test on the chamber, saying that he would be happy to duplicate Collins's tests in Gammon's attorneys' presence. However, Gammon's attorneys never agreed to have the test duplicated. Ultimately, the trial court ruled that the test results were inadmissible, basing its decision on *Parker v. State*, 333 Ark. 137, 968 S.W.2d 592 (1998), in which this court noted the rule that when a test or experiment is an attempt to

reenact the original happening, the essential elements of the experiment must be substantially similar to those existing at the time of the original occurrence. The trial court, stating that the tests were an attempt to "simulate an accident in a vacuum," ruled the tests results were inadmissible. The court also found that Knight Farms agreed not to perform the test unless Gammon's attorneys were there.

In this appeal, Farm Bureau argues that this ruling was erroneous for two reasons. First, Farm Bureau contends that a party should not be able to block the admission of test results by refusing to attend the testing, and then rely on their absence as grounds for exclusion. While we certainly do not condone the actions of Gammon's attorneys, Jimmie Wilson and Dion Wilson, we also point out that Farm Bureau has offered no authority to support this argument for reversal. Secondly, Farm Bureau maintains that the experiment should have been admitted, even though it did not conform to the conditions surrounding the litigated situation, because it was designed to show the general traits and capacities of material involved in the controversy. *See Carr v. Suzuki Motor Co.*, 280 Ark. 1, 655 S.W.2d 364 (1983).

The general rule is that a trial court has discretion in determining the relevance of evidence and in gauging its probative value against unfair prejudice, and its decision on such a matter will not be reversed absent abuse of that discretion. *Thomson v. Littlefield*, 319 Ark. 648, 893 S.W.2d 788 (1995). It is also well-settled that when a test or experiment is an attempt to reenact the original happening, the essential elements of the experiment must be substantially similar to those existing at the time of the accident. *Carr v. Suzuki Motor Co.*, *supra*. Although it is not necessary that the conditions of an experiment be identical to those existing at the time of the occurrence, there must be a substantial similarity, and the variation must not be likely to confuse and mislead the jury. *Id.* When an experiment is done out of the presence of the opposing party, this court has held that the trial court did not abuse its discretion in finding that the integrity of the tests were violated and the test results were inadmissible. *Thomson, supra.* Here, the trial court ascertained that the attempt to repeat the earlier test would not be sufficient to reenact the original occurrence; based on the facts presented, it was within the court's discretion to reach such a conclusion.

Next, Farm Bureau asserts that the trial court abused its discretion in denying Knight Farms' attempt to introduce an "air board," a training aid that simulated the brake system on a tractor and the air brake system on a trailer. This air board would have been used to demonstrate whether or not the truck's brakes were working properly. During the trial, Knight Farms proposed that this evidence would demonstrate to the jury how the brake system on the truck actually worked. However, the trial court refused to let him use this piece of demonstrative evidence. After the jury retired, Knight Farms proffered Dennis Collins's testimony about the air board. Collins said that he could have used the physical exhibit to actually show the jury what he was talking about, instead of just describing how the components of a truck's braking system worked.

The trial court found that the air board still would not have been admissible, stating that the air board system was not substantially similar to the existing events at the time of the original occurrence. The court explained further that there was "no way" the exhibit could "simulate the weight on the truck, the conditions of the road, the road surface, the age of the equipment . . . . The witness himself admits that he cannot simulate the tires on the road, which is essential to stopping a truck[.]" In sum, the court concluded, the demonstration would be confusing to the jury, and therefore should be excluded.

 Again, in *Carr v. Suzuki Motors*, this court held that the essential elements of an experiment must be substantially similar to those existing at the time of the accident. Here, the court determined that the experiment was very much unlike the conditions at the time of the accident; accordingly, we cannot say that this ruling was an abuse of discretion.

Farm Bureau's final point under its cumulative error argument is that the trial court consistently demonstrated bias against Daggett, the Knights' counsel. In its brief, Farm Bureau cites numerous instances in which Judge Simes cut Daggett off, refused to let him make a record, threatened him with contempt, limited his examination of witnesses, and pressed Daggett to hurry up his presentation of his case.

 Farm Bureau no doubt included these references to specific moments of perceived bias because this court has held that it will not reverse on an allegation of bias where there are no specific examples of bias in [the] brief. *See Mitchell v. State*, 314 Ark.

343, 863 S.W.2d 268 (1993). However, both *Mitchell, supra,* and *Dodson v. Allstate Ins. Co.,* 345 Ark. 430, 47 S.W.3d 866 (2001), held that an argument regarding judicial bias was not preserved for appellate review because there had been neither objection to the allegedly biased statements below nor a motion for the trial judge to recuse. *See Mitchell,* 314 Ark. at 343; *Dodson,* 345 Ark. at 441. Farm Bureau's abstract of the trial does not show that Daggett ever asked the trial judge to recuse, and its brief does not point out where such a motion was made.

Farm Bureau's last point on appeal returns this court's attention to the actions of the Pulaski County Circuit Court, which considered the legal malpractice case against Daggett. Here, Farm Bureau argues that Pulaski County Circuit Judge Ward erred by denying its motion for summary judgment on the breach of contract claim.[1] The court's ruling reads as follows:

> [Daggett's] breach in this action was his failure to timely docket the record on appeal. Because the court has found that had [Daggett] not breached his contract with [Farm Bureau], the judgment in the underlying case still would have been affirmed, as a matter of law, [Farm Bureau] cannot prove that they sustained damages as a result of this breach. Proof of damages is an essential element of a breach of contract claim.

On appeal, Farm Bureau contends that Judge Ward injected an element of proximate causation into a breach of contract issue, and that such an approach was improper, because an allegation of breach of contract does not involve proximate cause. In support of

---

[1] Ordinarily, an order denying a motion for summary judgment is not an appealable order. However, such an order is appealable when it is combined with a dismissal on the merits that effectively terminates the proceeding below. *Gammill v. Provident Life,* 346 Ark. 161, 55 S.W.3d 763 (2001); *see also* Ark. R. App. P. 2(a)(2); *Robinson v. Beaumont,* 291 Ark. 477, 725 S.W.2d 839 (1987); *Karnes v. Trumbo,* 28 Ark. App. 34, 770 S.W.2d 199 (1989). In the *Gammill* case cited above, the trial court granted Provident's motion for summary judgment, and at the same time, denied Gammill's motion, dismissing his claims with prejudice. In these circumstances, this court held, Gammill properly appealed the trial court's denial of his summary-judgment motion. Much the same situation is present here: Judge Ward denied Farm Bureau's motion at the same time it granted Daggett's, and also dismissed Farm Bureau's complaint with prejudice. Therefore, Farm Bureau properly appeals the denial of its summary-judgment motion.

its argument, Farm Bureau cites *Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996), wherein this court held that, in a legal malpractice claim involving an allegation of breach of contract, "proximate causation is not an essential element to a finding of damages due to contractual breach." *Clark*, 323 Ark. at 389.

 The Pulaski County court appears to have found that Daggett did, in fact, breach his contract with Farm Bureau. We agree with this portion of the court's ruling. However, as set forth above, the court was wrong in its conclusion that there could have been no proof of damages due to the fact that the "judgment in the underlying case still would have been affirmed." We therefore reverse and remand to the Pulaski County court for a determination of what damages, if any, Farm Bureau incurred as a result of Daggett's failure to timely docket the appeal in the Phillips County case.

IMBER, J., dissents in part.

ANNABELLE CLINTON IMBER, Justice, dissenting in part. I join the majority opinion in all respects, except that I do not believe the Phillips County Circuit Court abused its discretion in giving Gammon's requested AMI Civ. 4th 903 instruction to the jury, and, thus, dissent from that portion of the opinion. In addition, I write to note that Rule 52(a) of the Arkansas Rules of Civil Procedure does not require a circuit court to make findings of fact and conclusions of law in cases decided by summary judgment. It is undisputed that the Pulaski County Circuit Court disposed of this case by granting summary judgment pursuant to Ark. R. Civ. P. 56 (2003). Rule 52(a) plainly states that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under these rules." Ark. R. Civ. P. 52(a) (2003). Therefore, because the Pulaski County court's decision arose out of a motion under the rules, findings of fact and conclusions of law were unnecessary.

The majority concludes that "[i]n this case, there was no evidence whatsoever that the truck was not properly equipped with the brakes required by § 27-37-501," and, therefore, the Phillips County Circuit Court erred in giving AMI 903 to the jury. Indeed, the jury instruction given incorporates parts of Ark. Code Ann. § 27-37-501 (Repl. 1994). The instruction essentially in-

forms the jury that a violation of the statute is evidence of negligence. The jury was instructed with respect to the statute as follows:

There was in force in the State of Arkansas at the time of the occurrence statutes which provided Arkansas Code Annotated 27-37-501. "*Every motor vehicle*, other than a motorcycle or motor driven cycle which operated upon a highway, *shall be equipped with brakes adequate to control the movement of, and to stop and hold, the vehicle*, including two separate means of applying the brakes. Each of which means shall be effective to apply the brakes to at least two of the wheels. If these two separate means of applying the brakes are connected in any way it shall be so constructed so that the failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two wheels. Every motorcycle and every motor driven cycle when operated upon a highway shall be equipped with at least one brake which may be operated by hand or foot. If a trailer or semi-trailer of a gross weight of 3,000 pounds or more when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop and to hold said vehicle and so designed to be applied by the driver of the motor vehicle from its cab, and every vehicle, trailer or semi-trailer sold in the States and operated upon the highways shall be equipped with service brakes upon all wheels of every said vehicle and trucks and truck tractors having three or more axles need not have brakes on the front wheels except that when the brakes are equipped with at least two steerable axles, the wheels of one axle need not be equipped with brakes."

Section (2)(A), "The parking brake or brakes shall at all times be capable of being applied in conformance with the requirements of subdivision one by either the driver's muscular efforts or by spring actions or by other energy. The parking brakes shall be so designed, constructed and maintained that when once applied, they shall remain in the applied position with the required effectiveness despite exhausting any other source of energy or leakage of any kind so that they cannot be released unless adequate energy is available upon release of such brake or brakes to make immediate application with the required effectiveness."

"*All brakes shall be maintained in good working order* and shall be so adjusted as to operate [as] equally [as practicable] with respect to the wheels on opposite sides of the vehicle."

"A violation of one or more of these statutes, although not necessarily negligence is evidence of negligence to be considered by you along with all of the other facts and circumstances of the case."

(Emphasis added.) The plaintiff in the Phillips County case, Gammon, specifically testified that he tried to apply the brakes on the truck and they did not work. Moreover, there was evidence in the case that raised a question concerning whether the brakes were "maintained in good working order."

A recent decision by the Arkansas Court of Appeals, *Vann v. Cook,* 70 Ark. App. 299, 17 S.W.3d 103 (2000), is particularly instructive. In that case, the court of appeals concluded that the trial court erred when it refused to instruct the jury with an AMI 903 instruction incorporating Ark. Code Ann. § 27-37-501. There, the defendant testified that he went through a stop sign, but that he had no alternative because his brakes did not work. *See Vann v. Cook, supra.*

Similarly, in the Phillips County case at issue here, the plaintiff testified that the truck rolled over because the brakes did not work, and the AMI 903 instruction given to the jury incorporated section 27-37-501, stating in part that a truck "shall be equipped with brakes adequate to control the movement of, and to stop and hold, the vehicle," and that "[a]ll brakes shall be maintained in good working order." Furthermore, there was evidence to support a conclusion that the brakes were not adequate to control the movement of the truck, and that the brakes were not maintained in good working order. This court has consistently held that a party is entitled to a jury instruction when it is a correct statement of the law, and there is some basis in the evidence to support giving the instruction. *Barnes v. Everett,* 351 Ark. 479, 95 S.W.3d 740 (2003); *Coca-Cola Bottling Co. v. Priddy,* 328 Ark. 666, 945 S.W.2d 355 (1997). Moreover, this court does not reverse a trial court's ruling on whether to submit a jury instruction absent an abuse of discretion. *Barnes v. Everett, supra; see also Grillot v. State,* 353 Ark. 294, 107 S.W.3d 136 (2003). There is no dispute as to the rectitude of the instruction's statement of the law. Additionally, there is some basis in the evidence to support giving the instruction. I cannot therefore conclude that the Phillips County Circuit Court abused its discretion in giving the AMI 903 instruction.

While I must dissent from the majority's holding that the Phillips County Circuit Court erred in giving the AMI 903 instruction to the jury, I join the majority opinion in all other respects. The Pulaski County Circuit Court's summary judgment decision should be reversed and remanded "for a determination of what damages, if any, Farm Bureau incurred as a result of Daggett's failure to timely docket the appeal in the Phillips County case."