Cite as 2020 Ark. App. 233

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV-19-439

| | |
|---|---|
| MARK HUNTER | **Opinion Delivered:** April 15, 2020 |
| APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CV-16-607] |
| V. | |
| PATRICIA A. KECK; JASON COATNEY; AND KECK & AUSTIN, LLC | HONORABLE DOUG MARTIN, JUDGE |
| APPELLEES | AFFIRMED |

## MEREDITH B. SWITZER, Judge

In this legal malpractice lawsuit, Mark Hunter sued Patricia Keck, Jason Coatney, and Keck & Austin, LLC ("Keck and Austin"), in the Washington County Circuit Court, alleging that Keck and Austin failed to perfect an appeal in an underlying breach–of–contract action in which Hunter was a party. The breach–of–contract action involved two car dealerships and their respective owners. Jared Davis; J2R, LLC; and Impact 180, Inc., were the plaintiffs ("Davis"). Mark Hunter, the appellant herein, Hunter Enterprises Incorporated d/b/a Suzuki of Springfield, and the corporate bookkeeper were the defendants ("Hunter"). The case was tried before a jury, which found in favor of Davis and awarded multiple verdicts against Hunter on the breach of an option-to-purchase agreement and the breach of an August 8, 2008 loan agreement and resulting conversion of property. Hunter engaged Keck and Austin to represent him on appeal of the judgments entered against him. It is undisputed that Keck and Austin did not perfect the appeal because it

failed to file the notice of appeal in a timely manner. Hunter therefore sued Keck and Austin for legal malpractice.

Keck and Austin sought summary judgment on Hunter's legal-malpractice claim contending that even if the appeal had been timely filed, Hunter would not have succeeded on his appeal. Hunter responded and filed his own motion for summary judgment. The trial court granted Keck and Austin's motion for summary judgment and denied Hunter's. This appeal followed, and we now affirm.

Our review of whether summary judgment was properly granted turns on whether Hunter's appeal would have been successful if the appeal had been perfected. To prevail on a claim for legal malpractice, "a plaintiff must prove that the attorney's conduct fell below the generally accepted standard of practice and that this conduct proximately caused the plaintiff damages." *S. Farm Bureau Cas. Ins. Co. v. Daggett*, 354 Ark. 112, 122, 118 S.W.3d 525, 530 (2003). Regarding proximate cause, the plaintiff must show that, but for the attorney's alleged negligence, "the result in the underlying action would have been different." *Id.* In this case, as in *Daggett*, the issue of proximate cause for failure to file an appeal is a question of law to be decided by the judge, not the jury. This determination requires the trial court to act as the appellate court would act, reviewing the decision in the underlying lawsuit under the appropriate appellate standard of review. *Sturgis v. Skokos*, 335 Ark. 41, 977 S.W.2d 217 (1998).

In reviewing a jury's verdict, our appellate courts determine whether it is supported by substantial evidence. *See, e.g.*, *Roggasch v. Sims*, 2016 Ark. App. 44, 481 S.W.3d 440. Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to

2

compel a conclusion one way or the other. *Id.* In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id.* We give that evidence the highest probative value. *D.B. Griffin Warehouse, Inc. v. Sanders*, 349 Ark. 94, 76 S.W.3d 254. It is not an appellate court's province to try issues of fact; we simply examine the record to determine if there is substantial evidence to support the jury verdict. *Id.* The weight and value of testimony is a matter within the exclusive province of the jury. *Esry v. Carden*, 328 Ark. 153, 942 S.W.2d 846 (1997).

Our review of the merits of the underlying lawsuit reveals that the trial court did not err in awarding summary judgment to Keck and Austin on the malpractice claim. An appeal of the underlying lawsuit would not have been successful, even if timely filed. We therefore affirm the grant of summary judgment.

Hunter makes three basic arguments to support his position that his appeal would have been successful and the challenged verdicts reversed: (1) Keck and Austin breached the standard of care by failing to file a timely appeal; (2) expert opinions (such as that allowed by the circuit court from former Justice Robert Brown) are improper and should not be considered by the trial court; and (3) there was insufficient evidence to support the challenged verdicts.

First, it is undisputed that Keck and Austin breached the standard of practice by missing the deadline for filing a notice of appeal, but that is not enough to establish legal malpractice. Hunter must also show that Keck and Austin's failure to file a timely notice of appeal was the proximate cause of damages he sustained. Second, there is no real indication

3

the trial court relied on Justice Brown's letter, deposition, and affidavit about whether an appeal would have been successful. Moreover, evidentiary rulings are reviewed under an abuse-of-discretion standard, and we are not persuaded that the trial court abused its discretion in allowing the introduction of this evidence. More importantly, we can resolve the major issue presented in this case without considering Justice Brown's opinion.

Our focus, therefore, lies on Hunter's challenges to the sufficiency of the evidence supporting the judgments he had intended to appeal. First, Hunter contends that the jury's finding that he breached the option-to-purchase agreement is not supported by the evidence because (1) the agreement required Davis to exercise the option within one year or by May 31, 2009; (2) Davis admitted he failed to give notice of his intent to exercise the option to purchase; and (3) Davis failed to give any reasonable or credible reason for failing to give notice. Hunter argues, therefore, that his appeal from this verdict would have been successful if it had been timely filed. We disagree.

Here, viewing the facts regarding the option-to-purchase agreement most favorably to Davis as the prevailing party, it is undisputed that Davis paid Hunter the $75,000 required by the option-to-purchase agreement. The agreement provided that Davis had the exclusive right to purchase Hunter's Suzuki of Springfield dealership between July 15, 2008, and August 1, 2009, and it obligated Hunter to retain Davis's services and Davis to provide onsite management services. The agreement further provided that if Davis failed to exercise his option prior to May 31, 2009, the option would expire, and Hunter could retain the consideration. Davis and Hunter had a serious falling out on November 24, 2008. Hunter had Davis escorted off the dealership property, changed all the locks, and severed all

4

connection with Davis. Under these facts, the jury could reasonably weigh the evidence and make credibility determinations to conclude that Hunter forcibly removed Davis and severed all connections and, in doing so, that he breached the agreement and released Davis from his obligations to perform those services. The jury specifically found that Hunter breached the agreement and that Davis was entitled to $75,000 in damages, plus the interest and fees awarded by the trial court. Our appellate courts would not have disturbed the jury's verdict under those facts because substantial evidence supports it.

Hunter further contends that the jury's finding that he breached the August 8, 2008 loan agreement resulting in the conversion is not supported by the evidence because (1) Davis admitted Hunter loaned him $325,000 to pay off certain automobiles; (2) the loan required that the total balance of the loan be paid off and paid to Hunter by August 31, 2008; (3) Hunter was given titles to certain vehicles as collateral for the loan; (4) if the loan was not paid by the deadline, the agreement required that the loan collateral become Hunter's property for him to do with as he wished; (5) Davis admitted that he failed to pay off the loan by August 31, 2008, and further admitted he gave Hunter a check for $269,000, which would have paid off the loan balance, but it bounced; (6) no reasonable juror could find that the balance wasn't really due because Davis and Hunter had "discussed" an extension when Davis wrote a check attempting to pay the balance by the deadline, but the check bounced; and (7) the vehicles therefore became Hunter's property. Consequently, he argues that his appeal of this verdict would have also been successful. Again, we disagree.

Viewing the facts most favorably to Davis with respect to the verdict regarding the August 8, 2008 loan agreement and conversion, those facts support the verdicts. Davis

5

arranged to purchase the Suzuki of Fayetteville dealership from a nonparty. Then, on August 8, 2008, Davis borrowed $325,000 from Hunter to pay off the nonparty's GMAC obligation. Davis agreed to pay Hunter $355,000 before August 31, 2008, to reimburse him for the August 8, 2008 loan. According to the August 8 agreement, Hunter was to hold all vehicle titles and would release them as Davis paid back the associated loan amounts. If the loan was not paid in full by August 31, 2008, Hunter would own all titles and automobiles by default. A list of twenty used vehicles was prepared and signed by Davis. The parties further agreed that in addition to the open titles on those twenty vehicles and the written note securing the August 8 loan, a total of thirty-eight used vehicles from the Suzuki of Fayetteville lot became part of the collateral for the loan, of which only thirty-five were the primary subjects of the suit.

Davis alleged in his complaint that Hunter breached the August 8 agreement by retaining profits above the loan repayment of $355,000. That allegation was supported at trial by a spreadsheet prepared by Jeffrey Wood, who also testified about each of the vehicles and demonstrated that Hunter received an amount that exceeded the amount of the loan repayment. Wood's testimony and spreadsheet support the jury's verdict. Moreover, while Davis did not dispute the fact that he could not repay Hunter the $355,000 by August 31, 2008, he testified that Hunter agreed to an extension of that deadline. It was within the jury's province to weigh and value the evidence on this issue. *Esry*, *supra*.

Here, the jury not only had before it Davis's testimony about an agreed extension, there was also evidence that Hunter never notified Davis he was in default; he never threatened to sue Davis; Hunter and Davis took two trips together after the August 31

6

deadline; and Davis testified that Hunter knew the $269,000 check would bounce before he cashed it, but he insisted on the check as another means of security. Hunter and Davis both testified that their working relationship continued after the August 31 deadline. In addition, the jury heard testimony that for almost two months after the deadline, Hunter and his bookkeeper continued to keep a separate record to account for the sales of the thirty-five vehicles with the intention of applying those sales toward the loan repayment. Thirty-four of the thirty-five vehicles were sold, and Hunter retained the proceeds. Hunter acknowledged that before the November 21, 2008 falling out with Davis, he was treating the sales as a credit toward the $355,000 debt. Several financial exhibits were also before the jury.

Under these facts, the jury could reasonably conclude that the August 8 deadline was extended by agreement and that Hunter therefore breached the agreement when he retained the proceeds from the sale of Davis's vehicles that exceeded the $355,000 loan amount. Substantial evidence supported the jury's verdicts concerning the August 8 loan and resulting conversion. The judgments associated with these verdicts would not have been reversed on appeal even if the notice of appeal had been timely filed.

The circuit court correctly found that the underlying case would have been affirmed if the appeal had been timely filed. It therefore did not err in granting summary judgment to appellees.[1]

---

[1]In conjunction with this appeal, Keck and Austin seek reimbursement for fees and costs associated with its preparation of the supplemental abstract and addendum. Extensive supplementation was required in order to understand the points on appeal presented by Hunter. Accordingly, we grant Keck and Austin's motion for attorneys' fees and costs in the amount of $1857.16.

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*Danny R. Crabtree*, for appellant.

*Matthews, Campbell, Rhoads, McClure & Thompson, P.A.*, by: *David R. Matthews*, *Sara L. Waddoups*, and *Scott Tidwell*, for appellees.